David Ray HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 69634.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 13, 1989.

Rehearing Denied Nov. 22, 1989.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty. & R.W. Fisher, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for State.

## OPINION

MILLER, Judge.

Appellant was convicted of capital murder. V.T.C.A. Penal Code § 19.03(a)(2). After the jury returned affirmative find-

ings to the three special issues submitted pursuant to Art. 37.071, V.A.C.C.P., the trial court sentenced appellant to death. On direct appeal to this Court, appellant raises nineteen points of error. We affirm appellant's conviction.

Appellant does not challenge the sufficiency of the evidence to support his conviction, but a detailed recitation of the facts is necessary to the disposition of several points of error. Appellant was charged with intentionally causing the death of Mark Mays by shooting him with a firearm while in the course of committing or attempting to commit the offense of kidnapping of Roxanne Lockard. Lockard testified she was dating the deceased, who was separated from his wife, at the time of the offense. Lockard lived in Austin but was visiting the deceased in Beaumont. She arrived in Beaumont on Friday night, August 30, 1985. The following day, after the deceased got home from work, Lockard and the deceased sat at the pool, drank champagne, and celebrated Lockard's purchase of a new car. That evening the two went to dinner, and Lockard testified the deceased had one or two drinks of Crown Royal bourbon at dinner. They arrived back at the deceased's apartment sometime after midnight and went to bed.

Lockard testified she was awakened at about 2:30 a.m. on September 1, 1985, by a light shining in her eyes. She realized the light was from a flashlight and batted it away. The person holding the light, who was later identified by Lockard as appellant, told her he had a gun. At this point, appellant told the deceased to get out of bed and lock himself in the hallway bathroom, which he did. Appellant then directed Lockard to get out of bed and put on some clothes. He instructed her to enter his truck which was parked behind Lockard's car outside the back of the deceased's apartment. Lockard testified appellant looked directly into her face when they got in the truck.

Lockard next noticed the deceased had come out of the apartment and was standing in front of appellant's truck. She saw the deceased standing near the rear of her car with a gun in his hands. Lockard heard gunfire but could not determine who fired the first shot. She got out of the truck and did not see appellant, but she did notice the deceased behind her car, partially bent over like "he was throwing up." Realizing Mays, the deceased, had been shot, Lockard ran inside the apartment complex to find someone to call the police and an ambulance.

The Beaumont Police Department found the deceased lying in a pool of blood behind his apartment with his gun underneath him. An autopsy revealed the deceased died from multiple gunshot wounds, two of which were fatal. A trace metal test came back positive for both of the deceased's hands, and there was evidence the deceased shot his gun at least four times. The police also discovered five spent nine millimeter cartridges on both sides of Lockard's car near the rear of the vehicle and a bullet hole in the fence surrounding the deceased's apartment. The back door of the apartment had been pried open with a screwdriver which was found in the street behind Lockard's car.

Appellant testified at guilt/innocence that the screwdriver belonged to him but he did not pry open the door with it because the door was unlocked. Appellant went to the deceased's apartment to burglarize it, and he took a .38 caliber revolver with him because he thought "it would avoid anybody from getting hurt." Contrary to Lockard's testimony, appellant testified that the light from the hall awakened her and the deceased and that Lockard never "swatted" at the flashlight. Inside the apartment, the deceased acted "jumpy" as appellant told him to lock himself in the bathroom, and, in fact, the deceased came out of the bathroom two or three times wanting to talk with appellant, but appellant flatly refused. Fearing the deceased might attack him, appellant "used" Lockard to safely get out of the apartment.

Appellant testified that he did not recall if Lockard ever got into his truck, because as he opened the door on the driver's side he heard a loud noise and felt something hit him in the neck. He then realized the

deceased had shot him and therefore ducked behind the door of his truck. According to appellant, the deceased then shot him again, hitting him in the shoulder. At this point, appellant fired back one time, ducked behind the door again, rose up and fired two more shots. Appellant stated he then repeated this sequence. Appellant testified he thought the deceased was trying to kill him and was going to shoot him through the open doors of the truck. Appellant ran to the front of the truck where he saw the deceased on his hands and knees and shot him one last time, this time from about ten feet away. Appellant thereafter got in his truck and drove away.

The pathologist who performed the autopsy on the deceased testified Mays had gunshot wounds on both arms, his right shoulder, which wound was disabling, and his face. The deceased also had two wounds to his chest area which were fatal. A forensic pathologist testified that the stippling on the deceased's body was consistent with the muzzle of the gun being within twenty-four inches of the deceased's body, and it could have been as close as twelve inches, when one of the fatal shots was fired.

After commission of the alleged offense, appellant requested an interview with Sam Kittrell, Assistant Chief of Police in Vidor. They talked at the Vidor police station on September 5, 1985, at 4:00 a.m. According to Kittrell, appellant had wounds on his right arm and side of his neck. Appellant told Kittrell what happened in Beaumont and directed authorities to the site where he disposed of the weapon, which had been stolen from a Beaumont resident earlier the night of the alleged offense. Appellant also spoke to officers with the Beaumont Police Department while in Vidor. Officer Patrick O'Quinn testified appellant told him he was "looking for a piece" when he entered the deceased's apartment and the deceased "acted crazy" but never threatened him. According to O'Quinn, appellant's first shot at the deceased missed, so he fired two more times, but the deceased was still moving so appellant fired once more to "finish him off."

In his nineteenth point of error, appellant claims the trial judge erred in failing to properly charge the jury on the murder/voluntary manslaughter issue in violation of *Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Cr.App.1983). Appellant objected to the jury charge at trial. Appellant argues that the application paragraph on capital murder submitted at guilt/innocence failed to require the State to disprove that he acted as a result of sudden passion arising from an adequate cause and thereby shifted the burden of proof on this issue to him since the sudden passion "element"[1] was submitted only in the application paragraph on voluntary manslaughter.[2] The State argues that the deceased was acting in Lockard's defense and/or to prevent her kidnapping, and therefore, under the rationale of *Lincecum v. State,* 736 S.W.2d 673 (Tex.Cr.App.1987), cert. denied 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 936 (1988), the issue of voluntary manslaughter was not raised. We agree with the State and therefore do not decide whether the trial court's charge on this issue violated *Cobarrubio* because appellant was not entitled to a jury charge on voluntary manslaughter.

In *Lincecum,* the defendant was charged with intentionally causing the death of the victim in the course of committing and attempting to commit the offense of kidnapping, robbery, or aggravated sexual assault. On appeal, the appellant argued that the trial court erred in failing to submit a charge to the jury on voluntary manslaughter. The defendant's confession showed that the victim stabbed him with his knife. The defendant argued this evidence sufficiently established sudden passion arising from an adequate cause under

---

1. See *Braudrick v. State,* 572 S.W.2d 709, 710 (Tex.Cr.App.1978), cert. denied 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477, wherein this Court discusses this factor differentiating murder and voluntary manslaughter.

2. After instructing the jury on capital murder, the charge instructed the jury on the lesser included offense of voluntary manslaughter. There was no instruction on the offense of murder included in the court's charge.

V.T.C.A. Penal Code § 19.04.[3] Assuming *arguendo* the defendant experienced sudden passion after he was stabbed by the victim, we held the defendant failed to show adequate cause. Thus, we stated:

Clearly, [the victim's] acts in stabbing appellant were justified in self-defense and in defense of her son. [citations omitted] Under the facts of this case, appellant may not claim that [the victim's] acts in self-defense gave rise to adequate cause so that he was justified in killing her, even if he was acting under sudden passion after the stabbing. Thus, the issue of voluntary manslaughter was not raised by the evidence.

*Lincecum*, 736 S.W.2d at 679.

The State argues, and we agree, this same rationale should apply in the present cause where the person who allegedly provoked appellant was acting to prevent commission of a felony under V.T.C.A. Penal Code § 9.32(3)(B) and in defense of a third person under V.T.C.A. Penal Code § 9.33. The evidence clearly indicates that appellant initiated the entire criminal episode which led to the deceased's death and that the deceased shot appellant in an attempt to prevent the aggravated kidnapping of Lockard. See V.T.C.A. Penal Code § 20.04(a)(2). Under §§ 9.32 and 9.33, supra, the deceased was justified in using deadly force in defense of himself and a third person, specifically Lockard. We will not consider the deceased's justified actions as an adequate cause for appellant's illegal acts. To so hold would allow criminals a justifiable reason for killing their victims who rightly seek to protect themselves or others from criminal activity. See *Westley v. State*, 754 S.W.2d 224, 230 (Tex.Cr.App. 1988); *Penry v. State*, 691 S.W.2d 636, n. 2 (Tex.Cr.App.1985), cert. denied 474 U.S. 1073 (1986). Thus, we hold that the deceased's actions in shooting appellant did not constitute adequate cause from which sudden passion may arise. See Penal Code § 19.04(a).

Holding that adequate cause is not raised by the evidence in this case, appellant was not entitled to a charge on voluntary manslaughter. We therefore do not determine whether there is *Cobarrubio* error in the jury charge. Appellant's nineteenth point of error is overruled.

■ In his eighteenth point of error, appellant contends the evidence was insufficient to support the jury's affirmative finding on the third issue submitted at punishment. At the punishment phase of trial, the trial judge submitted to the jury, pursuant to the dictates of Art. 37.071, the following question:

3. Was the conduct of the defendant in killing the deceased unreasonable in response to the provocation, if any by the deceased?

The jury answered "yes" to this special issue. When addressing this challenge to the sufficiency of the evidence, we must review the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found beyond a reasonable doubt that appellant's conduct was unreasonable in response to provocation by the deceased. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Westley*, supra.

Appellant urges that the evidence from the only two eyewitnesses to this offense, himself and Lockard, is insufficient as a matter of law to support the jury's answer. He argues that Lockard's testimony indicates the deceased had a gun, but Lockard did not know who fired the first shot and was unable to testify to what actually occurred. Appellant's testimony established

---

3. Section 19.04 of the Penal Code provides:

(a) A person commits [the offense of voluntary manslaughter] if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code [murder], except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

(b) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

that he was shot twice and wounded, that he was scared during the exchange of gunfire with the deceased, and that he thought the deceased was trying to kill him. Appellant further asserts that the investigating officers testified that he was wounded in the "altercation." Appellant's argument ignores the well-established principle that the jury, in answering the special issues under Art. 37.071, supra, at the punishment stage of a capital murder trial, may consider all evidence adduced at the guilt/innocence phase of trial, as well as the evidence introduced during the penalty phase. *Smith v. State*, 676 S.W.2d 379 (Tex.Cr. App.1984), cert. denied 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985), citing *Bravo v. State*, 627 S.W.2d 152 (Tex.Cr. App.1982). Appellant's argument also portrays him as the victim of this offense. Appellant conveniently forgets that he broke into the deceased's apartment armed with a deadly weapon and abducted Lockard at gunpoint. It is clear from the testimony at trial that both the deceased and Lockard feared for their lives when confronted by appellant and rightfully so as neither the deceased nor Lockard was armed at that point. The evidence also showed that after the exchange of gunfire began in the parking lot appellant continued to fire at the deceased, once at close range, even though the deceased was injured and on the ground on his hands and knees unable to further fire at appellant. This close range shot was the final one by appellant; testimony of the medical examiner established that this shot was one of the two fatal shots suffered by the deceased. Appellant used all the rounds in his pistol in committing this offense.

Appellant submits that the only cases in which this Court has held the evidence sufficient on the third special issue is where the defendant did not act out of fear for his life and where the killing of the deceased was not shown to be reasonable at all. Appellant cites *Penry*, 691 S.W.2d 636; *Green v. State*, 682 S.W.2d 271 (Tex.Cr. App.1984), cert. denied 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985), and *Smith*, 676 S.W.2d 379, to support his contention, but he misreads our decisions in

these cases. We found the evidence sufficient in these cases either because the struggle between the victim and the defendant was not reasonable provocation or because the defendant's response to the victim's resistance was unreasonable. The defendant fearing for his life was not the determining factor in judging the sufficiency of the evidence. *Smith, Green,* and *Penry.* The import of our analysis was that a defendant is not entitled to a "no" answer on the third punishment issue simply because there is evidence in the record that the victim used deadly force in resisting the defendant. While such evidence may be "mitigating" and entitle a defendant to submission of the third issue at punishment, see *Evans v. State*, 601 S.W.2d 943, 947 (Tex.Cr.App.1980), it does not render the evidence insufficient to support an affirmative finding on the third punishment issue.

Moreover, the deceased had a right to defend himself as well as Lockard. Such action does not *automatically* rise to the level of provocation as a matter of law in special issue number three. See *Nichols v. State*, 754 S.W.2d 185, 204 (Tex.Cr.App. 1988), cert. denied — U.S. ——, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989) (robbery victim's right to defend himself was not "provocation"). Having reviewed all the evidence presented during trial in a light most favorable to the jury's verdict, we find it sufficient to support the jury's affirmative answer to special issue number three. Appellant's point of error is overruled.

■ In points of error twelve, sixteen and seventeen, appellant asserts the prosecutor committed reversible error in his jury arguments at both stages of trial. In the twelfth point of error, appellant complains of the following argument by the prosecutor at guilt/innocence:

(Prosecutor): Ladies and gentlemen, there's one verdict that's proper in this case. You've known it since yesterday, the verdict that family and those police officers and the people of Jefferson County know is proper in this case—

Mr. Powell (defense counsel): Your Honor, we would object to counsel arguing that the jury should base their decision on the expectation of anybody, except on the evidence.

The Court: Sustained.

Mr. Powell: We would further request, Your Honor, that the Court instruct the jury to disregard [the prosecutor's] statement.

The Court: So instructed.

The prosecutor then concluded his jury argument without any further objection or a motion for mistrial from defense counsel.

■■■ The general rule is that to preserve error committed during jury argument the defendant must object until receiving an adverse ruling.[4] *Purtell v. State,* 761 S.W.2d 360 (Tex.Cr.App.1988); *Briddle v. State,* 742 S.W.2d 379 (Tex.Cr. App.1987), cert. denied — U.S. —, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). An exception to this rule exists when the jury argument is so prejudicial that an instruction to disregard the argument could not cure the harm.[5] In that instance, neither a timely objection nor an adverse ruling is required to preserve the error for review. *Motley v. State,* 773 S.W.2d 283 (Tex.Cr. App.1989), and cases cited therein at p. 293.

Appellant contends the prosecutor's argument was that type argument that is so prejudicial the instruction to the jury given by the trial judge could not have cured the harm. Appellant claims the prosecutor's argument amounts to reversible error because he implied that the deceased's family, the police, and the Jefferson County community expect a particular verdict (obviously that of guilty) in this case. The State

counters that the prosecutor's argument was a reasonable deduction from the evidence presented at trial through the testimony of appellant and a forensic pathologist.[6]

■■ Proper jury argument falls into four specific categories, *viz:* (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument by opposing counsel, and (4) plea for law enforcement. See *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973). This Court has held that a jury argument which refers to the expectations or demands of the community for a particular result constitutes error, and the harm cannot be cured by an instruction to the jury to disregard the prosecutor's statements. *Cortez v. State,* 683 S.W.2d 419 (Tex.Cr.App.1984); *Wilson v. State,* 581 S.W.2d 661 (Tex.Cr.App.1979) (Opinion on State's Motion for Rehearing); *Bothwell v. State,* 500 S.W.2d 128 (Tex.Cr. App.1973). In *Cortez,* 683 S.W.2d at 420–421, a case in which the trial judge overruled an objection to the prosecutor's plea for the jury to heed the demands of the community for a life sentence for the defendant, Judge Teague, writing for the majority, stated:

> [J]ury argument by a prosecuting attorney that is designed to induce the jury to convict the defendant or assess him a particular punishment because 'the people' desire such is improper jury argument. This type argument is manifestly improper, harmful and prejudicial to the defendant and will not be countenanced by this Court. Whenever a prosecuting attorney tells a jury that the people of

4. The proper method of pursuing an objection to an adverse ruling is to (1) object and, if the objection is sustained, (2) request an instruction to disregard and (3) move for a mistrial. *Brooks v. State,* 642 S.W.2d 791, 798 (Tex.Cr. App.1982).

5. One court of appeals has properly characterized this exception as where "an argument is clearly calculated to inflame the minds of the jurors and is of such character as to suggest the impossibility of withdrawing the impression produced on the juror's minds (sic)." *Rodriguez v. State,* 646 S.W.2d 539 (Tex.App.—Houston [1st Dist.] 1982) no pet.

6. The State relies on appellant's trial testimony wherein he admitted shooting the deceased five times, that the deceased was on his hands and knees at the time of the final shot, and that he could not see the deceased's gun because he was in a crouched position. As noted earlier, the forensic pathologist testified that stippling on the deceased's body indicated he had been shot at close range, meaning the muzzle of the gun was within twenty-four inches of the deceased's body.

the community where the crime was committed wants (sic) an accused person convicted ..., he is not only injecting a new and harmful fact into evidence, which had no place there originally, but he is conducting his case along lines never contemplated by the framers of our constitution.

See also *Cox v. State*, 157 Tex.Cr.R. 134, 247 S.W.2d 262, 263 (1952).

The infirm jury argument in *Cortez*, which occurred at the punishment phase of that trial, was:

You have a chance right now to cut this cancer cell out of this society, and hopefully save it. It is up to you twelve people. *Now, the only punishment that you can assess that would be any satisfaction at all to the people of this county would be life [imprisonment].* (Emphasis in original).

We held the trial judge erred in overruling the defendant's objection to this argument, and this argument constituted reversible error. The import of the prosecutor's argument was that the community would not be satisfied with a verdict less than the maximum punishment. This argument was clearly an attempt by the prosecutor to induce the jury to assess the defendant the maximum penalty because the community " 'want[ed],' 'desire[d],' 'require[d],' or 'expect[ed]' the jury to return that penalty" and, as such, was manifestly improper. *Cortez*, 683 S.W.2d at 421.[7] Noting that the trial judge overruled the objection to

the complained of argument, we reversed the appellant's conviction in that cause.

Comparing the arguments noted to be improper in *Cortez* to the argument in this case, we hold that the prosecutor's argument was not an overt plea for a conviction based on community sentiment rather than the evidence at trial and, therefore, was not improper jury argument. First we find compelling the fact that the prosecutor was unable to complete his statement by virtue of appellant's objection, and we are not inclined here to speculate whether the prosecutor's argument would have encroached upon an improper area for jury argument. Second, we believe the prosecutor's argument is analogous to saying "after hearing all the evidence, I know, you know, and everyone in this courtroom knows the defendant is guilty."[8] This appears to be the gist of the State's argument. The prosecutor did not, in our view, tell the jury to convict appellant because that verdict was expected of them.

Having concluded the prosecutor's comments were within the proper bounds of jury argument, it logically follows that this argument was not that type that is so prejudicial that an instruction to disregard would not cure the harm. Appellant's twelfth point of error is overruled.

■ In his sixteenth point of error, appellant argues the prosecutor committed reversible error in his punishment argu-

---

7. *Cortez*, at 421, citations omitted, also set out an instructive list of similar arguments that had been condemned by this Court as pleas for the jury to follow community sentiment:

In the past, this Court has disapproved the following arguments: "The people of De Soto are asking the jury to convict this defendant." "The people of this community expect you to put this man away, and the only way you can do it is to send Willie Porter to the electric chair." "I tell you, the people of Matagorda and Jackson counties are expecting you to do your duty in this case and assess the defendant's punishment at death." "Look at this courtroom—it is crowded with Polk County people, demanding the death penalty for Bob White." "The people are present in this courtroom to see that this defendant gets punished." "The eyes of Commanche County are upon you—look at this crowd in this courtroom, and a crowd has been here all during

this trial. The will and wish of every law abiding citizen of Commanche County wants a verdict of death." "The people of Nueces County expect you to put this man away." "There are over a million people that stand between him and the penitentiary. They'd want him to go there if they knew what he did." "The jury ought to convict the defendant because the people of Denison desire it." The above arguments have been disapproved by this Court because the effect of the language used was to ask the jury to convict or punish the defendant upon public sentiment or desire rather than upon the evidence that the jury had received.

8. This argument may be objectionable as going outside the record but since that objection was not raised at trial or on appeal, we do not address the merits of any such contention.

ment when he argued matters outside the record. During the prosecutor's rebuttal argument he discussed the jurors' duty to serve on a jury and then began to discuss his duty:

> Prosecutor: I'm here, because it's my duty and it's my job to be here, and it's not my job to come down here and put on fabricated evidence.
>
> It's not my job to hide the truth.[9] In fact, there is, once again, a Statute in law that say (sic) if I have anything, if I have any evidence that is—
>
> Defense Counsel: Your Honor—
>
> Prosecutor: —that is exculpatory—
>
> Defense Counsel: I would object to [the prosecutor's] argument. The law that's necessary for the jury is included in the Charge, and for [the prosecutor] to argue the law outside the Charge is improper argument.

The trial judge overruled defense counsel's objection stating the prosecutor had "the right to answer."

Appellant contends in his brief that the prosecutor's argument was improper as outside the record. After reviewing the arguments at punishment of both the prosecution and defense, we find the prosecutor's argument was in response to defense counsel's argument and therefore was proper. Defense counsel questioned the credibility of the State's witnesses and whether the State wanted justice in this case, and also argued that the prosecutor had selectively picked testimony that was favorable to his case, ignored evidence which supported "no" answers to the special issues, and failed to call an officer regarding appellant's showing of remorse.

Appellant also contends the prosecutor's argument implied to the jury that the defense presented fabricated evidence and attempted to impugn the integrity of the defense by referring to matters outside the record.[10] This complaint on appeal differs from the objection raised at trial, thus the error, if any, is waived. See *McGee v. State*, 774 S.W.2d 229 (Tex.Cr.App.1989). Appellant's sixteenth point of error is overruled.

■ Appellant argues in his seventeenth point of error that reversible error occurred when the prosecutor interjected his personal opinion in his jury argument during the punishment phase of trial. The prosecutor stated to the jury "[a]nd I think you know my opinion is, you bet, 'Yes' is a correct answer [to the special issues at punishment]". Appellant failed to object to this argument. In light of the record as a whole, this argument was not so manifestly improper and prejudicial that an instruction to disregard could not have cured the harm. See discussion *infra*. Thus, any impropriety in the State's argument was waived by appellant's failure to object. The seventeenth point of error is overruled.

In points of error thirteen through fifteen, appellant complains of the erroneous admission of evidence during the punishment phase of his trial.

■ In his thirteenth point of error, appellant contends the trial court erred in admitting into evidence, through the testimony of Officer Gus Rose, the punishment assessed in a prior capital murder case in which appellant was associated. The prior capital murder case arose out of the killing of a Dallas police officer in 1976. Appellant originally confessed to the killing because "it would help his reputation" but later recanted and implicated his cohort Randall Dale Adams. Appellant was not charged in connection with the offense, and he testified for the State in Adams' trial for capital murder. Adams was convicted and

---

9. During general voir dire examination, the prosecutor stated to the panel "[a]s far as the State is concerned, it is not our job just to obtain convictions. We are required by Statute to see that justice is done." See Art. 2.01, V.A.C.C.P.

10. Appellant argues the totality of the prosecutor's argument, some of which was not objected to by appellant, regarding his duty to bring exculpatory evidence denied him due process and a fair trial. The State correctly asserts in their brief that appellant's argument on this

sentenced to death.[11] During the punishment phase of the instant case, the State elicited testimony from the police officer who handled the investigation of the 1976 offense. This police officer testified in the present cause, over appellant's objection, that Adams was sentenced to death for the 1976 offense but was presently serving a life sentence in Huntsville. Appellant contends that this evidence was irrelevant and so inflammatory and prejudicial as to deny him a fair trial.

The State contends appellant may not be heard to complain on appeal of the admission of this testimony because he later elicited the same testimony from the officer on cross-examination. The State cites *Womble v. State*, 618 S.W.2d 59, 62 (Tex.Cr.App. 1981), wherein we stated "[w]hen a defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, the defendant is not in position to complain on appeal." See also *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989).

Reviewing the record from the punishment phase of the trial, we find that prior to the State calling Officer Rose and eliciting the complained of testimony, appellant's counsel, on cross-examination of Chief Kittrell, established that Adams had been tried and convicted for the capital murder of the Dallas police officer and was now serving a life sentence for that conviction. The State then called Officer Rose to testify and established, over objection, that Adams was assessed the death penalty for his capital murder conviction. Appellant's counsel cross-examined Rose regarding the

witnesses in the Adams' case and the credibility of appellant as a witness in that case. Appellant's counsel elicited the following testimony:

Q. (Defense counsel): And the State of Texas asked twelve people to believe [appellant] in assessing the death penalty against another man (Adams), didn't they?

A. (Rose): Yes, they did.

Q. And this is after you had information that [appellant] had been involved in some offenses in Vidor, and after you had information that he wanted to be a tough guy and after you came to some conclusion that he was dangerous, the State of Texas still asked twelve people to accept his version and his word as truth in a matter serious enough to put a man to death, is that correct?

A. Yes. In regards to that specific incident yes.

This testimony informed the jury of essentially the same fact that appellant previously objected to and sought to prevent the jury from hearing; to wit, that the Adams' jury assessed him the death penalty. Any error caused by the prosecutor in informing the jury of this fact was rendered harmless since appellant elicited substantially the same testimony from Rose and Kittrell. Accord *Brown v. State*, 757 S.W.2d 739 (Tex.Cr.App.1988); *Willis v. State*, 785 S.W.2d 378 (Tex.Cr.App.1989). Appellant's thirteenth point of error is overruled.

Appellant groups together in his brief his fourteenth and fifteenth points of error.[12]

point of error is multifarious and presents nothing for review.

11. Adams' conviction and sentence were affirmed by this Court in *Adams v. State*, 577 S.W.2d 717 (Tex.Cr.App.1979). The United States Supreme Court, however, reversed this decision, and Adams was given a new trial. In the interim, Governor Clements commuted Adams' sentence to life imprisonment. On the State's Motion for Rehearing, Adams' conviction and life sentence were again affirmed by this Court. *Adams v. State*, 624 S.W.2d 568 (Tex.Cr. App.1981). Recently, in *Ex parte Adams*, 768 S.W.2d 281 (Tex.Cr.App. No. 79,787 delivered March 1, 1989), we set aside Adams' conviction because he had been denied a fair trial in that

the State suppressed evidence favorable to him, deceived the trial court during his trial, and knowingly used perjured testimony to gain his conviction. (Appellant was only one witness who committed perjury during Adams' capital murder trial. Appellant recanted his trial testimony during the hearing on Adams' writ of habeas corpus and attested to Adams' innocence.)

12. Appellant states point of error fourteen as "[t]he State was allowed to introduce indirectly inadmissible hearsay to the jury indirectly (sic)." He phrases his fifteenth point of error as "[t]he State was allowed to introduce speculative, opinion evidence concerning the 'feeling' of

The State contends appellant has preserved nothing for review as to the fourteenth point because it fails to point out error by the trial judge, and as to the fifteenth point, the State claims it is merely an explanation of the fourteenth point. For reasons somewhat different than the State argues, we agree no error is preserved.

■ During the punishment phase of trial, the State called Raymond Rucker, a deputy sheriff in California, to testify. Rucker arrested appellant in California in November of 1979 for carrying a concealed weapon and attempted burglary. In conjunction with those two offenses, appellant was later charged with attempted robbery of a convenience store clerk and kidnapping of James Filaan. While questioning Rucker as to the events surrounding appellant's arrest for these offenses, the State ascertained that appellant and Filaan were talking at the time Rucker approached them, but he could not hear what they were saying. The prosecutor elicited the following testimony:

Q. Did you subsequently learn what [appellant] told Filaan?
A. Yes.
[Defense counsel]: The Defense objects. Counsel is attempting to elicit hearsay. He's already testified he didn't hear the conversation, and the only basis of knowledge he would have, then, would be second-hand.
The Court: What's your reply?
[Prosecutor]: I didn't ask him what he learned they said, just whether he learned what was said, Your Honor.
The Court: That's not what you asked. The objection is sustained. Rephrase your question.
Q. (by the prosecutor) Without going into the contents of what that conversation was, did you subsequently learn what [appellant] told Filaan?

A. Yes, sir, I did.
Q. That's been some six and a half years ago, right?
A. Yes, sir.
Q. Do you feel lucky to be alive, today?
[Defense counsel]: I object to that question. It's purely prejudicial and inflammatory for the jury, and it's for the jury to speculate on something not in evidence and it calls for his opinion—for this witness to speculate, and it's offered, purely, for the purpose of trying to inflame this jury, and has no evidentiary value.
The Court: Overruled.
Q. (by the prosecutor) Do you feel lucky to be alive, today?
A. (by Rucker) Very much so.

Appellant claims the prosecutor introduced inadmissible hearsay into evidence through this testimony. We do not reach this contention because appellant's hearsay objection at trial was sustained so he obtained all the relief he requested and nothing is preserved for review. *DeRusse v. State*, 579 S.W.2d 224 (Tex.Cr.App.1979). Appellant's subsequent objection was not based on hearsay and therefore cannot provide any basis for relief on this point of error. *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978), reh'g denied. Appellant's fourteenth point of error is overruled.

■ In his fifteenth point of error, appellant contends reversible error occurred when the prosecutor elicited opinion evidence from Rucker in order to bring inadmissible hearsay before the jury.[13] More specifically, appellant claims that Rucker's testimony that he felt "lucky to be alive" implied that appellant communicated a threat to Rucker's life to Filaan, who in turn related that threat to Rucker. Appellant contends this testimony is inadmissible because Filaan's statement to Rucker is hearsay and "the prosecutor expressed to

a witness in order to bring inadmissible matters before the jury."

13. Rule 701 of the Texas Rules of Criminal Evidence, which was not in effect at the time of appellant's trial, provides that lay witness "testimony in the form of opinions or inferences is limited to those opinions or inferences which

are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of [the] testimony or the determination of a fact in issue." Rucker's testimony went to the question of appellant's future dangerousness, a fact issue for the jury under Art. 37.071(b)(2).

the jury indirectly that which he could not have expressed directly." This ground alleged on appeal, the indirect admission of hearsay testimony, does not comport with appellant's trial objection, and therefore nothing is preserved for our review. The fifteenth point of error is overruled.

■ In appellant's eleventh point of error, he asserts he was denied a fair trial when the State failed to provide discovery of a polygraph examination of the State's chief witness, Lockard.[14] During presentation of the State's case-in-chief, defense counsel learned through a reference in Detective Sheffield's offense report that Lockard had been given a polygraph examination by a Detective Tatum. Defense counsel then petitioned the trial court for further discovery under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),[15] for a continuance, and for a mistrial.

The State's response was two-fold: that the results of the polygraph examination are not exculpatory and, in any event, the State would make Detective Tatum available to appellant. The trial proceeded without "any ultimate resolution" being reached by the trial judge on the motion for continuance; the trial judge denied the motion for mistrial. On cross-examination of Detective Sheffield, defense counsel established Lockard was turned over to Detective Tatum "to determine whether she was telling the truth", and Detective Sheffield never received any indication that Lockard was being "less than a hundred percent truthful" with the detectives.

The next day of trial, appellant again raised his discovery and continuance motions because appellant had not yet had contact with Detective Tatum and, therefore, appellant asserted the State failed to comply with the trial judge's discovery order. The prosecutor indicated that he had been unable to contact Detective Tatum but assured the court and defense counsel that Detective Tatum would be available to be interviewed by 5:00 p.m. that day. The trial judge acknowledged defense counsel's motion for continuance had merit if the prosecutor did not get the polygraph information from Detective Tatum and give it to defense counsel. The trial then proceeded without any further motion or objection by defense counsel. The matter was never brought up again during the trial by either defense counsel or the State.

On the basis of these facts, we find appellant's point of error is completely without merit. We have reviewed the record and there is no indication that the State subsequently failed to produce Detective Tatum for an interview with defense counsel or that the State did not produce the polygraph examination results. Appellant fails to point us to any place in the record which would affirmatively show that the State did not comply with the trial judge's instructions on this matter. The motion for continuance was not raised again, nor was it ever granted. Appellant also did not raise, as a ground in his motion for new trial, this alleged failure of the State to produce the polygraph information. In other words, appellant has wholly failed to show he was denied the requested polygraph information and that he was denied a fair trial. The eleventh point of error is overruled.

■ Appellant's points of error numbers one through ten address alleged errors during voir dire. In point of error number one, appellant argues the trial court erred in sua sponte excusing venireman Curtis Dixon from the jury panel. Appellant contends Dixon was not absolutely disqualified from jury service under Art.

---

14. The defense did not wish to introduce the polygraph examination results into evidence necessarily, but wanted the results as an aid in their discovery and investigation of possible exculpatory evidence. It is well-settled in this state that results of polygraph examinations are not admissible for any purpose. See *Castillo v. State*, 739 S.W.2d 280 (Tex.Cr.App.1987).

15. In his Second Motion for Discovery and Inspection of Evidence, appellant requested, inter alia, all evidence which might tend to exculpate him, and the trial court granted the motion to the extent the requested items were exculpatory. Appellant did not cite *Brady v. Maryland* as the basis for the discovery of this information but relied on Art. 39.14, V.A.C.C.P., and the Texas and United States Constitutions.

35.19, V.A.C.C.P., so it was improper for the trial judge to excuse Dixon on his own motion, and this excusal amounted to reversible error because the State exercised all its peremptory challenges and appellant was forced to accept an objectionable juror. Appellant cites *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980), cert. denied 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251, and *Goodman v. State*, 701 S.W.2d 850 (Tex.Cr.App.1985), in support of his contention. We find that neither *Esquivel* nor *Goodman* is dispositive, and, given the state of the record, appellant mischaracterizes the action taken by the trial judge.

The record reflects that a group of potential venirepersons was called pursuant to Art. 35.01, V.A.C.C.P.,[16] and brought into the courtroom on April 7, 1986. The trial judge introduced both parties to the prospective jury panel and then explained some basic tenets of criminal jurisprudence. The State and defense counsel were both given the opportunity to make general remarks to the panel concerning the issues they would be confronted with during voir dire. At this point in time, no individual voir dire was done but the panel had apparently been sworn [17] pursuant to Art. 35.02, V.A.C.C.P.[18] After the general remarks, the trial judge explained that the clerk would be contacting each veniremember regarding his time for individual "interviews" by counsel and recessed the panel except for those venirepersons who "cannot, for some reason that is very, very important to [them], return to be personally questioned by the lawyers[.]" Six veniremembers remained, one of whom was Dixon.

During questioning pursuant to Art. 35.03, § 1, V.A.C.C.P.,[19] Dixon explained to the trial judge he was expecting permanent employment in Houston on either April 15th or April 21st. Neither the State nor defense counsel questioned Dixon at this time, and the trial judge asked him to wait outside. The State had no objection to excusing Dixon, but defense counsel objected stating "the Defense would object to excusing Mr. Dixon on that excuse." After questioning several other venirepersons as to their excuses, the trial judge asked defense counsel why he objected to the excusal of Dixon. Defense counsel responded:

I'm sympathetic about his job, but he looks, potentially, like a good Defense juror. That's why, real frankly.

The trial judge overruled this objection and excused Dixon.

In a recent decision, we determined that the excusal of a prospective venireperson at this stage of trial was not a "sua sponte" excusal. See *Johnson v. State*, 773 S.W.2d 322 (Tex.Cr.App.1989). Under Art. 35.03, V.A.C.C.P., the trial judge has the authority to hear and determine the sufficiency of excuses for not serving as a juror. We held the excusal of a prospective juror under Art. 35.03, § 1, supra, is within the sound discretion of the trial judge, and his decision will not be disturbed on appeal if the record supports his ruling. *Johnson*, at p. 330.

Cases such as *Green v. State*, 764 S.W.2d 242 (Tex.Cr.App.1989); *Nichols v. State*, 754 S.W.2d 185 (Tex.Cr.App.1988), cert. denied, — U.S. —, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989); *Rougeau v. State*, 738 S.W.2d 651 (Tex.Cr.App.1987), cert. de-

---

**16.** Article 35.01 provides in part:
When a case is called for trial and the parties have announced ready for trial, the names of those summoned as jurors in the case shall be called.

**17.** The record of the general voir dire does not indicate the panel was sworn under Art. 35.02, but defense counsel stated during his opening remarks to the panel that "[y]ou've already taken one oath[.]"

**18.** Article 35.02 provides:
To those present the court shall cause to be administered this oath: "You, and each of

you, solemnly swear that you will make true answers to such questions as may be propounded to you by the court, or under its directions, touching your service and qualifications as a juror, so help you God."

**19.** Section one of Art. 35.03 provides in pertinent part:
. . . the court shall then hear and determine excuses offered for not serving as a juror, and if the court deems the excuse sufficient, the court shall discharge the juror or postpone the juror's service to a date specified by the court.

nied, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988); and *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976), cert. denied, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977), wherein we found error, albeit not always reversible, from sua sponte excusals of jurors were not dispositive in *Johnson*. These cases were founded on the principle that a trial court should not on its own motion excuse a prospective juror *for cause* under Art. 35.16, V.A.C.C.P, unless he is absolutely disqualified from jury service under Art. 35.19, V.A.C.C.P. The same applies to *Esquivel* and *Goodman* which appellant cites in support of his contention.

The opinions in *Nichols*, 754 S.W.2d at 193, and *Rougeau*, 738 S.W.2d at 661, relying on *Goodman* cite this rule of law as "a trial judge should never sua sponte excuse a prospective" juror unless the juror is absolutely disqualified or exempt under the law. Deleting the "for cause" language implies that a trial judge's discretionary excusal of a venireperson pursuant to Art. 35.03 constitutes error. In *Rougeau*, the trial judge excused venireperson Smith because he had a prepaid trip to Hong Kong which would interfere with serving as a juror, and in *Nichols*, the trial judge excused venireperson Hurzeler because his wedding was scheduled near the time trial was to begin. In both cases this Court found the trial court erred in excusing the prospective jurors on its own motion. Neither opinion discussed Art. 35.03 as a basis for the trial judge's actions. See also *Green*, 764 S.W.2d at 246, n. 1. Under *Johnson* and our holding today, neither the excusal of venireperson Smith nor the excusal of venireperson Hurzeler would be "sua sponte" or error. To the extent *Rougeau* and *Nichols* conflict with the holding in this case and *Johnson*, they are overruled. *Johnson* therefore is the controlling caselaw in this area. Since the prospective venireperson in *Johnson* was excused pursuant to Art. 35.03, § 1, rather than for cause, the rationale in the opinions cited by appellant does not apply.

The present case is analogous to *Johnson*. There was no individual voir dire examination of Dixon by either the State or appellant's counsel to determine whether he was absolutely disqualified from jury service under Art. 35.19 or challengeable for cause pursuant to Art. 35.16. In fact, there was no individual voir dire of Dixon as contemplated by Art. 35.17(2), V.A.C.C.P., although he had been sworn pursuant to the dictates of Art. 35.02. The trial judge did not excuse Dixon for cause but for the reason that he had a new job in a different county. Under these circumstances, we hold the trial judge's excusal of Dixon was not an abuse of discretion under Art. 35.03 and therefore no error is presented. Appellant's first point of error is overruled.

■ In his second point of error, appellant contends the trial court erred in excluding Christine Lindenberg from the jury panel over his objection. The State challenged Lindenberg for cause under Art. 35.16(b)(1) and (b)(3), V.A.C.C.P., based upon her personal convictions regarding the death penalty. The trial judge granted the challenge relying on *Bell v. State*, 724 S.W.2d 780 (Tex.Cr.App.1986), reh'g. denied, and *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

Lindenberg indicated on her juror information card that she did not believe in the death penalty. Upon questioning by the prosecutor, she stated, however, that on an "intelligent level" she could see that in some circumstances the death penalty was warranted, but on a "personal level" she did not believe she could make that decision. Lindenberg indicated she would have no trouble determining the guilt or innocence of a defendant but the penalty phase of trial presented her with problems. She felt she would be guided by her personal feelings during deliberations on the special issues at punishment and could not assess the death penalty,[20] and she also stated it

---

**20.** The prosecutor explained to this prospective juror that upon the jury's affirmative answers to the punishment issues the trial judge must sentence the defendant to death; it is not the jury who actually sentences the defendant. Lindenberg felt that, in effect, she was sentencing the defendant to death if she answered "yes" to the special issues and that it was not a matter of

was "not probable" that she would change her mind.

Defense counsel then questioned Lindenberg in an attempt to rehabilitate her. Lindenberg read the juror's oath and stated she could follow the oath and the law and render a true verdict on those bases at guilt/innocence. She also responded affirmatively to defense counsel's inquiry as to whether she would follow the law and answer the special issues "yes" when "the evidence is there and you are instructed that the law says to answer [the questions] 'yes'". Defense counsel then objected to the State's challenge, and the trial judge denied the challenge at this point.

The State then continued voir dire examination of Lindenberg. She equivocated somewhat when answering whether she could answer the special issues and "live with [her]self" and finally indicated that she could not, at this point in the case, definitively state whether she would be able to answer the special issues. At one point, Lindenberg summarized her feelings as follows, which is representative of her remarks during voir dire:

> It's this: I do not believe that I could sentence someone to death. I don't believe that. But when people say, "Well, in this case, all this", then, it mixes it up and you think maybe you could, but when it really gets down to it, it is if you can or not. And when I got out in the hall, no matter what you have persuaded me or said, "Well, maybe I could or I couldn't", but when I got out in that hall, I'm going to end up saying, "No, I can't make that bottom line decision".

The prosecutor concluded his voir dire examination of Lindenberg with her agreeing that she would ultimately be guided by her personal feelings during punishment deliberations and that her personal views regarding the death penalty would prevent or substantially impair her from performing her duties as a juror in accordance with the oath and the jury charge. The State renewed its challenge for cause upon the

same bases. Defense counsel's subsequent questions did not attempt to rehabilitate Lindenberg on the issues supporting the challenge for cause, but he again objected to the challenge. The trial judge granted the State's challenge the following day.

■■■ A juror who will ultimately be guided by her personal views rather than the law is not qualified to sit on a jury in this state. *Landry v. State*, 706 S.W.2d 105 (Tex.Cr.App.1985), cert. denied 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986). *Wainwright v. Witt* permits the exclusion of a prospective juror whose personal views will prevent or substantially impair the performance of her duties as a juror in accordance with the juror's oath and the judge's instructions. See e.g. *Knox v. State*, 744 S.W.2d 53 (Tex.Cr.App.1987), cert. denied, 486 U.S. 1061, 108 S.Ct. 2834, 100 L.Ed.2d 934, reh'g denied, 487 U.S. 1246, 109 S.Ct. 4, 101 L.Ed.2d 956 (1988). As we stated in *Bell*, 724 S.W.2d at 794, the *Wainwright v. Witt* standard

> ... recognizes that such bias [against the death penalty] is not susceptible to unmistakably clear proof through the voir dire process, and that venire members may be reticent, inarticulate, or unsure of how they would react when faced with imposing the death sentence. [citation omitted] Finally, it makes clear that 'whether or not a venireman *might* vote for death under certain *personal* standards, the State still may properly challenge that venireman if he refuses to follow the statutory scheme and truthfully answer the questions put by the trial judge.' [citation omitted].

After reviewing Lindenberg's voir dire as a whole, see *Cordova v. State*, 733 S.W.2d 175 (Tex.Cr.App.1987), cert. denied, 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988), we hold the record supports the trial judge's implicit finding that prospective juror Lindenberg would be substantially impaired in her ability to abide by her oath as a juror. Because of her personal convictions regarding the death penalty,

---

"putting it off on the Judge[.]" She agreed with the prosecutor that this situation presented a

distinction without a difference.

Lindenberg evidences a bias against a phase of the law which the State is entitled to rely for punishment. Consequently, the trial judge did not err in granting the State's challenge for cause, and appellant's second point of error is overruled.

In points of error numbers three through ten, appellant argues the trial court erred in failing to grant his challenges for cause to eight venirepersons. Appellant correctly asserts error is preserved as to each overruled challenge because he exhausted all his peremptory challenges, requested further peremptory challenges, which were denied, and was forced to accept an objectionable juror, whom he specified to the trial court. *Bell*, 724 S.W.2d at 795. We will address these points in the order presented by appellant.

■ In point of error number three, appellant contends venireman Mark Kucera was challengeable for cause for two reasons. First, appellant challenged Kucera on the basis of Art. 35.16(c)(2), V.A.C.C.P., because he admitted upon questioning by defense counsel that he would tend to give more weight to police officers' testimony than to testimony from "ordinary plain clothes" persons. When asked whether he thought the State's case would be "more believable" because of this opinion regarding testimony from law enforcement officers, Kucera answered "I don't know. I just don't know." When pressed by defense counsel for a definite answer, Kucera stated he would try to be fair but he believed the State's case would be more credible than appellant's if the State's witnesses were predominantly law enforcement personnel. Upon questioning by the State, however, Kucera answered affirmatively inquiries as to whether he could take the oath to serve as a juror, follow the law, and judge the testimony of law enforcement officers and lay witnesses by the same standard. Kucera also agreed with the prosecutor that everybody, including law enforcement officers, lies occasionally and he would "not automatically go with a law enforcement officer over a lay witness just because they're a law enforcement officer[.]" The trial judge denied appellant's challenge for cause. Defense counsel did not question the venireman any further on this issue but concentrated his subsequent questioning on the second basis for the challenge for cause.

Although we have set out only a portion of Kucera's voir dire examination, we have reviewed the entire voir dire of this venireman. We find the trial judge did not abuse his discretion in overruling appellant's challenge for cause on the basis of Art. 35.-16(c)(2).[21] Kucera clearly indicated he could follow the law and not prejudge any witness's testimony. While Kucera did state he would favor the State's case when defense counsel told him "I don't know" answers during voir dire were "not quite enough in this type of case", Kucera also expressed he did not believe that police officers always tell the truth. This Court has held that a prospective juror who maintains a belief that police officers always tell the truth is challengeable for cause, and the improper overruling of that challenge is reversible error. *Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr.App.1978). This cause is factually distinguishable from *Hernandez*. In light of Kucera's entire voir dire examination, a bias or prejudice against the law upon which appellant is entitled to rely has not been established. *Montoya v. State* (Tex.Cr.App. No. 69,644 delivered May 24, 1989); *Little v. State*, 758 S.W.2d 551 (Tex.Cr.App.1988), reh'g denied, cert. denied, —— U.S. ——, 109 S.Ct. 328, 102 L.Ed.2d 346.

---

**21.** Article 35.16(c)(2) provides that the defense may challenge a venireperson for cause if "he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment therefor." The defense did not specifically state this section as the basis for its challenge during voir dire, although it did artic- ulate Art. 35.16. Given the wording of this section and appellant's argument supporting the challenge, Art. 35.16(a)(9) is potentially the appropriate statutory basis for appellant's first challenge to Kucera. Article 35.16(a)(9) states a prospective juror is challengeable for cause if "he has a bias or prejudice in favor of or against the defendant[.]" Nevertheless, we address appellant's point of error given the severity of the penalty assessed.

In his brief, appellant predicates his second challenge to Kucera on Art. 35.16(a)(9) and (10). During voir dire appellant couched the challenge in terms of Kucera's inability to follow the law as to the burden of proof. In his brief appellant argues Kucera was challengeable for cause because he had already reached a conclusion as to appellant's guilt or innocence. The State contends that appellant has waived any error because this point of error does not comport with the challenge asserted during voir dire. From reading the voir dire, we discern appellant has intermingled the issues but he has not raised a new basis to support the challenge to Kucera even though appellant uses different terms. Thus, we find no waiver and address appellant's second challenge.

Appellant bases this challenge on the following colloquy:

Q. (by defense counsel) Okay. Now, what if you thought he was possibly guilty of capital murder. Okay? And by that, what I'm trying to tell you is you have some doubts and those are reasonable doubts—all right?—about capital murder and you have some doubts about voluntary manslaughter, too. Again, let's say you're given two sets of verdict forms here. Okay? You've got guilty, not guilty for capital murder, and guilty, not guilty for voluntary manslaughter. Could you put a not guilty in both of those blanks if the evidence wasn't there?

A. (by Kucera) No, I couldn't.

Q. You couldn't?

A. No.

Q. And why is that?

A. Well, I mean, wasn't there a man dead? Wasn't there a man shot?

Q. Let's even assume this, Mark: there's a man dead, and my client has been charged and indicted with that death. Okay?

A. Okay.

Q. And be honest with me because it's important about this question. There's a man dead, and my client is the one charged with this offense, and they fail to meet their burden of proof, and there are only, let's say, two charges which you can find on, capital murder and voluntary manslaughter. All right. Knowing that, could you, with the facts I've just given you, sign not guilty on both lines?

A. No.

Q. And why is that?

A. (No response).

Q. Is what you're telling me is that you believe because of the facts you've heard already that some punishment has to be meted out for the crime?

A. Do what now?

Q. Is what you're telling me about the fact that you couldn't put not guilty in either blank is—are you telling me that because my client is accused, there's a man dead, and just it would be something you couldn't do to find him not guilty of both offenses; is that right?

A. That's right.

Q. All right. Do you have a strong feeling about that?

A. No.

Q. Well, could you—is it possible you could write not guilty in both blanks?

A. (No response).

Q. And you know, with the knowledge, knowing that he would go free for the charges against him in this case.

A. I'd have to say no.

Q. All right. That you couldn't write not guilty?

A. Right.

\* \* \* \* \* \*

Appellant then challenged Kucera for his inability to follow the burden of proof as to capital murder and voluntary manslaughter. In his brief, appellant directs us to the voir dire testimony set out above for support of his argument that Kucera "had already reached some conclusion as to the guilt or innocence of appellant, and that such would affect him reaching a verdict. A review of said testimony indicates that this venireman, with the knowledge he possessed at that time, could not write 'not guilty' as his verdict in the case." While it is true this portion of Kucera's testimony reflects such a prejudice, the complete

record of Kucera's voir dire does not so reflect.

During the State's voir dire of Kucera, the prosecutor explained to Kucera that he had to be willing to follow the law to be a juror in this case. Kucera affirmed that he could take and follow the juror's oath, be fair to appellant, follow the law, and find appellant not guilty if the law so required. The prosecutor also presented hypothetical fact situations encompassing the issues of self-defense and voluntary manslaughter and qualified Kucera on both issues. Upon subsequent questioning by defense counsel, Kucera indicated that he had changed his opinion as to whether he could find appellant not guilty. Kucera affirmed he could find the defendant not guilty of both capital murder and voluntary manslaughter even if self-defense was not an issue at trial. Defense counsel did not question the venireman any further in regard to this challenge.

In determining whether the trial judge abused his discretion in denying appellant's challenge for cause, we review the complete voir dire of Kucera. *Cordova*, 733 S.W.2d 175. We hold there was no abuse of discretion in this instance. Kucera's testimony does not evince an inability on his part to follow the law as to burden of proof on either capital murder or voluntary manslaughter because he had reached a conclusion as to the guilt or innocence of appellant. Appellant has failed to meet his burden and demonstrate that exclusion of this venireman was proper. *Hernandez v. State*, 757 S.W.2d 744, 753 (Tex.Cr.App. 1988) (plurality opinion).

Finding no merit in any of the grounds raised in appellant's third point of error, we overrule it.

■ In his fourth point of error, appellant asserts the trial judge erred in overruling his challenge for cause to venireman Robert Carmack because Carmack indicated he could not answer "no" to the third special issue under Art. 37.071, V.A.C. C.P.,[22] and he therefore had a bias or prejudice against the law applicable to the case upon which the defense was entitled to rely. Art. 35.16(c)(2). Appellant argues Carmack's voir dire testimony makes it "abundantly clear that he could not afford appellant the right of hearing the testimony to decide whether or not he could answer such issue in favor of appellant."

The prosecutor presented Carmack with a hypothetical situation in which a man enters a convenience store armed with a sawed-off shotgun intending to rob the clerk. During the course of the robbery the clerk is killed by the robber because he either reached for a handgun or actually shot the robber and injured him. Carmack agreed with the prosecutor that the robber's response to the clerk's "provocation" was unreasonable in both situations. Carmack told defense counsel, by answering "no", that he could not envision any facts or provocation under which a defendant would be reasonable in killing another person when there was insufficient evidence of self-defense or sudden passion. Without citing a specific example, Carmack later told defense counsel he could envision such a situation but he "would have to hear everything to make up [his] mind[.]" Carmack vacillated on this issue throughout his voir dire. The State concluded Carmack's voir dire with affirmances from him that he would set aside his personal views and answer the third special issue according to the law and evidence at trial. Carmack told defense counsel "there would probably be cases where it would be [reasonable for a defendant to respond to provocation by killing someone], but I can't think of any." The venireman also stated that "there could be times when [killing someone] was maybe the only way out."

When reviewing the trial judge's ruling on a challenge to a prospective juror, we recognize that the trial judge is in the best position to gauge, *inter alia*, the venireman's sincerity and demeanor, and we therefore accord due deference to the decision of the trial court. *Holland v. State*,

---

**22.** The third special issue asks the jury: if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

761 S.W.2d 307, 318 (Tex.Cr.App.1988), reh'g. denied, and cases cited therein. Such deference is appropriate in this case since we are faced with a "cold" record and the prospective juror vacillated in his answers and sometimes appeared confused by the counselors' questions. Carmack's voir dire testimony is similar to that of the venireperson in *Phillips v. State*, 701 S.W.2d 875 (Tex.Cr.App.1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986). In *Phillips*, 701 S.W.2d at 881, we concluded:

> In this case although the venireman initially said, by answering 'no', that he could not conceive of a case in which he could find that the victim provoked the robber, he later said, by answering 'yes', that he could conceive of a case where the killing by the robber was not unreasonable in response to provocation by the deceased, as contemplated by Art. 37.-071, supra. We find that under the testimony before us, the trial judge did not err in holding that the prospective juror was not disqualified on the basis of his bias for or against the applicable law. [citations omitted].

Following our decision in *Phillips* and according the trial judge due deference, we hold the trial judge did not abuse his discretion in denying appellant's challenge for cause to Carmack on the basis of a bias or prejudice against the applicable law. Appellant's fourth point of error is overruled.

■ Appellant argues in his fifth point of error the trial court erred in failing to grant his challenge for cause to prospective juror Joann LeFleur because she had a bias or prejudice against appellant in that she did not presume him to be innocent.[23] Ap-

pellant cites Art. 35.16(a)(9), (a)(10), and (c)(2) in his brief as the statutory bases for the challenge, but we find from reviewing the record that section (a)(10) of this article was not raised at trial. We will not address the merits of a claim raised for the first time on appeal.

■ LaFleur's voir dire examination on the presumption of innocence is relatively short. She stated she believed in the presumption of innocence and presumed appellant to be innocent even though defense counsel told the panel he thought appellant had committed an offense. LaFleur did not express any feelings that appellant was guilty, but she thought it was important to proceed to trial in this case since appellant had "committed a crime, hasn't he?" LaFleur immediately answered "yes" to defense counsel's inquiry whether she understood the State had the burden of proof and that the proof had to be beyond a reasonable doubt. Defense counsel did not challenge LaFleur for cause at this time but proceeded to qualify her on other issues. We find no abuse of discretion by the trial judge in denying appellant's challenge for cause. See *Mays v. State*, 726 S.W.2d 937 (Tex.Cr.App.1986), cert. denied, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1987). The fifth point of error is overruled.

In his sixth point of error, appellant claims the trial court erred in overruling his challenge for cause to venireperson Kathryn Sowders. Appellant challenged Sowders pursuant to Art. 35.16(a)(10) arguing that she was already convinced he was guilty.[24] The trial judge denied this challenge because defense counsel "didn't ask the question as specified in section (10)[.]"

---

23. The State, while asserting LaFleur was qualified to serve, submits no harm is shown because they "apparently" struck this juror. The record clearly indicates LaFleur was excused by appellant. In his motion for additional peremptory strikes, however, appellant mistakenly deleted LaFleur from the list of persons he peremptorily challenged since the trial judge denied his challenges for cause. No additional peremptory strikes were granted as to any prospective juror. We hold there is no lack of harm or waiver shown; the State has merely misread the record.

24. During voir dire, appellant also specified Art. 35.16(a)(9) and Art. 35.16(c)(2) as grounds for excluding Sowders from the venire. In this point of error appellant does not raise Art. 35.-16(a)(9), so we do not discuss it. As to Art. 35.16(c)(2), appellant contends, *inter alia*, in his brief that Sowders was challengeable for cause under this statutory provision because she would require the defense to present evidence to convince her of appellant's innocence. Appellant raises this point for the first time in his brief, and thus we decline to address it.

Appellant infers from the trial judge's remark that he (the trial judge) would have granted the challenge if defense counsel had been given the opportunity to ask additional questions of Sowders.[25] Appellant presents no argument or authorities as to why the overruling of this challenge to prospective juror Sowders was error except he directs our attention to specific voir dire passages and cites Art. 35.16(a)(10).

Under Art. 35.16(a)(10)[26] the proponent of a challenge for cause must show that the prospective juror has established in his mind a conclusion as to the guilt or innocence of the defendant and that this conclusion will influence his verdict. Cf. *Richardson v. State,* 744 S.W.2d 65, 68 (Tex.Cr. App.1987). Otherwise, the challenge for cause may not be properly granted. In *Richardson,* the prospective juror told the trial court that he had formed an opinion as to the guilt or innocence of the defendant. At that point, the trial judge excused the venireperson over the defendant's objection that the predicate had not been laid for excusal under Art. 35.16(a)(10) because the venireperson had not been asked whether that opinion would influence his verdict. We held in *Richardson* the trial court erred in overruling the defendant's objection but on the facts of that case the error was not reversible.

■ The State submits Sowders' voir dire examination does not establish she had formed an opinion as to appellant's guilt or innocence and that appellant failed to ask Sowders if her belief that there was some evidence of guilt would influence her verdict. First we must determine whether appellant completed the predicate for excusal under Art. 35.16(a)(10), which necessarily involves a review of the voir dire examination. Recognizing the imprecise nature of voir dire interrogation, we refuse to be hypertechnical when making this determination.

Sowders was acquainted with one of the prosecutors in this case, Paul McWilliams, because of her family's involvement with Boy Scouts of America. In response to leading questions by defense counsel, Sowders stated she did not think the prosecutor would ask for the death penalty for an innocent man and McWilliams must feel he has some evidence of appellant's guilt since he is going forward with the prosecution of this case. However, Sowders did not believe the State's case had merit just because McWilliams was the prosecutor.[27] Sowders believed a trial was necessary because the grand jury had returned an indictment and someone had died so "someone was guilty of something." She stated that she believed there must be some evidence of appellant's guilt, or a possibility of

---

**25.** At the conclusion of the State's voir dire of Sowders and upon the trial judge's denial of his challenge for cause, appellant requested additional time to further question Sowders, which request was denied by the trial judge. Appellant proceeded to make a bill of exception delineating the questions he would have propounded if given the extra time. The trial judge noted in his ruling that the parties had agreed on a thirty minute time limit for voir dire and that appellant had used thirty-five minutes in his voir dire of Sowders. Appellant does not raise as a point of error the trial court's denial of additional time for interrogating Sowders. Thus, there is no need to determine whether the trial judge abused his discretion in conducting voir dire. *Barber v. State,* 737 S.W.2d 824 (Tex.Cr.App. 1987).

**26.** Article 35.16(a)(10) provides, in pertinent part:

(a) [A] challenge for cause may be made by either the state or the defense for any one of the following reasons:

(10) That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict. To ascertain whether this cause of challenge exists, the juror shall first be asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative, he shall be discharged without further interrogation by either party or the court. If he answers in the negative, he shall be further examined as to how his conclusion was formed, and the extent to which it will affect his action; ... If the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged[.]

**27.** Appellant challenged Sowders for cause because of her acquaintanceship with McWilliams, but this challenge was denied by the trial judge. Appellant does not raise this issue on appeal.

it, because of the indictment and defense counsel's opening remarks to the venire.[28] Sowders believed appellant killed a man because that was what defense counsel told her. However, she felt these beliefs would not influence her in reaching a verdict in this case and she could find appellant not guilty if the State failed in its burden.

From reviewing the record of Sowders' voir dire examination, we hold appellant has adequately established the predicate for a challenge for cause under Art. 35.16(a)(10). Appellant established Sowders had a belief that there was evidence of his guilt. That testimony from Sowders was sufficient to show she had a conclusion as to appellant's guilt or innocence—the first prong of the predicate. Then appellant asked Sowders if this belief would have an effect on her deliberations, i.e. "whether the conclusion so established will influence [her] verdict." See Art. 35.16(a)(10). Appellant's questions were adequate to complete the predicate even though he did not use the precise wording of the statute. Since we have determined appellant asked the appropriate questions under Art. 35.16(a)(10), we will now determine whether the trial judge abused his discretion in overruling appellant's challenge for cause on this ground.

■ Since Sowders stated her beliefs regarding evidence of appellant's guilt would not influence her verdict, her voir dire examination continued. Art. 35.16(a)(10). The State, through prosecutor Allan Massis, clarified that what the attorneys said during voir dire was not evidence and that appellant is presumed innocent until proven guilty. Sowders agreed that at this point in the proceedings she had no evidence of appellant's guilt and would vote not guilty. She also answered affirmatively that she could follow the presumption of innocence and base her verdict on the evidence presented at trial; she would not convict appellant on the basis of an indictment. The trial judge denied appel-

lant's challenge for cause, and the voir dire examination ceased.

Pursuant to Art. 35.16(a)(10), the trial court, in its discretion, determines whether a prospective juror will be impartial and render a fair verdict. See also *Faulder v. State*, 745 S.W.2d 327, 340–341 (Tex.Cr. App.1987). The trial judge commits error in denying a challenge for cause to the prospective juror when he abuses this discretion. After reviewing Sowders' complete voir dire examination, we find nothing which indicates she would not be competent to serve as a juror. We therefore hold the trial judge did not abuse his discretion in denying appellant's challenge for cause to Sowders. See *Johnson*, at pp. 325–28. The sixth point of error is overruled.

■ Appellant argues in his seventh point of error the trial court erred in denying his challenge for cause pursuant to Art. 35.16(c)(2) to prospective juror Antoinette Reed. Appellant claims Reed would have required him to put forth evidence during the punishment phase of trial to prove that his act of killing the victim was reasonable before she could vote "no" to the third special issue under Art. 37.071(b)(3). See footnote 21 at p. 21 *infra*.

Reed was nervous and oftentimes confused during her voir dire examination as this was her first experience with the jury selection process. During questioning by the prosecutor, Reed stated she could be a fair and impartial juror and reach a verdict based on the evidence and exhibits at trial. She also agreed with the prosecutor that she could answer "no" to special issue three if the State failed in its burden of proof. Reed's confusion arose when she was being qualified as to special issue three. Both parties asked her whether she believed it was reasonable under any circumstances for a person to murder someone when that same person is committing a crime. She agreed with defense counsel that she believed it was unreasonable to murder someone under any circumstances

---

**28.** Defense counsel told the panel that he would not challenge the claim that appellant was present at the scene of the offense, that he was armed and shot the victim, and that the victim died. Defense counsel also stated that appellant was guilty at the very most of voluntary manslaughter.

when you are committing a crime. Reed answered "yes" to defense counsel's question "don't you really think you would require us to prove to you some kind of circumstances that would make it reasonable to murder before you can answer [issue # 3] no?" Reed also stated, however, that she could not envision any such circumstance but agreed with the prosecutor that that did not mean such a circumstance did not exist. The State rehabilitated Reed by establishing she understood the burden of proof rests with the State, she could answer issue three "no" if the evidence was not there, and she could answer that issue according to the law and evidence. The trial judge denied the challenge for cause.

Defense counsel again questioned Reed and established she was confused by the attorneys' leading questions and was doing her best to answer truthfully. After the defense terminated its questioning the State was given another opportunity to question and rehabilitate the prospective juror. We have reviewed Reed's entire voir dire examination and do not set out anymore pertinent excerpts because the whole of Reed's voir dire examination reveals a "sequence of challenge and rehabilitation" on this issue. *Bell*, 724 S.W.2d at 796.

As we have noted, in the case of a vacillating venireman, we often defer to the trial judge's ruling on a challenge for cause because he views the prospective juror during interrogation and makes an implicit determination as to that juror's sincerity and credibility during that interrogation when making his ruling. We will overrule a trial judge's decision on a challenge for cause only when the record evidences an abuse of discretion on the part of the trial judge. After reviewing the voir dire transcription, we cannot say the trial judge abused his discretion in denying appellant's challenge to venireperson Reed. Appellant's seventh point of error is overruled. See *Bell*, at

797; *Cockrum v. State*, 758 S.W.2d 577 (Tex.Cr.App.1988), reh'g denied; and *Scott v. State*, 490 S.W.2d 578 (Tex.Cr.App.1973).

■ In his eighth point of error, appellant claims the trial court erred in overruling his challenge for cause to venireman Robert Hernandez. At the conclusion of his voir dire of Hernandez, defense counsel challenged this venireman for cause, stating:

Judge, at this time, we would challenge the juror under 35.16(A9) (sic) and 35.-16(C2) (sic), and direct the Court's attention to statements regarding the testimony of police officers.

In his brief appellant raises only Art. 35.-16(c)(2) as a basis for sustaining his challenge to Hernandez, so any error as to Art. 35.16(a)(9) has been waived. Appellant has also waived any error as to his claim under Art. 35.16(c)(2). On appeal appellant contends Hernandez should have been excluded from the venire because he had established in his mind that there was some evidence of appellant's guilt based upon the return of an indictment against him. Although appellant interrogated Hernandez on this issue during voir dire, he did not raise it as a ground supporting his challenge for cause. Since the basis for the challenge asserted during voir dire differs from that raised on appeal, appellant has waived any error.[29] See *Allridge v. State*, 762 S.W.2d 146, 157 (Tex.Cr.App.1988), cert. denied, —— U.S. ——, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989), (error presented on appeal must be same as objection raised at trial). Point of error number eight is overruled.

■ In his ninth point of error, appellant claims the trial court erred in denying his challenge for cause to venireman Johnnie Bloodsworth. Appellant challenged Bloodsworth under both Art. 35.16(a)(9) and (c)(2), but on appeal he raises only Art. 35.16(c), so any claim under Art. 35.16(a)(9) is waived. As to Art. 35.16(c)(2), appellant

**29.** The trial judge did not require the attorneys to state a ground supporting their statutory challenge. We find waiver in this instance because appellant specifically stated a ground for this challenge, which differs from the ground

stated on appeal, and we will not speculate that the challenge included this second ground. If we took that position we would possibly "bushwhack" the State on this point of error. See *Banda v. State*, 768 S.W.2d 294 (1989).

claims Bloodsworth had already formed an opinion as to the guilt of appellant, contravening his right to a presumption of innocence. Appellant concedes, and the voir dire examination indicates, Bloodsworth did not have an opinion as to appellant's guilt, but rather he had an opinion as to appellant's involvement in the alleged offense. Bloodsworth stated he "honestly [didn't] know" whether appellant was guilty or innocent but he knew appellant was "involved." Bloodsworth's opinion as to appellant's involvement in the alleged crime stemmed directly from defense counsel's earlier statement to the venire that appellant was present and armed at the scene of this offense and that appellant shot and killed the victim. (See discussion under point of error number six *infra*.) We hold the trial judge did not abuse his discretion in denying appellant's challenge to this venireperson. Appellant's ninth point of error is overruled.

 Appellant used his final peremptory challenge to strike venireman Jewel Hymel from the panel when the trial court denied his challenge for cause. Appellant contends Hymel should have been excluded from the panel and the trial court's failure to excuse Hymel on his challenge for cause was reversible error. The record reflects Hymel saw the word "guilty" written on the chalkboard in the jury deliberation room as he entered the courtroom for voir dire. Appellant challenged Hymel under Art. 35.16(a)(9), (a)(10), and (c)(2), and out of concern for "fundamental fairness" since the situation presented was not specifically addressed by Art. 35.16. We have repeatedly stated that a challenge for cause may be properly asserted on grounds which are not specified in Art. 35.16 where the challenge is based on facts showing the prospective juror would be unfit to serve. *Rogers v. State*, 774 S.W.2d 247 (Tex.Cr. App.1989); *Sosa v. State*, 769 S.W.2d 909 (Tex.Cr.App.1989); *Nichols*, 754 S.W.2d at 193. Challenges for cause not based on any ground mentioned in the statutes are addressed to the sound discretion of the trial judge. *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976), cert. denied, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266

(1977). We therefore review the record to determine whether the trial judge abused his discretion in denying appellant's challenge to Hymel.

Hymel actually went through two individual voir dire examinations. At the time of his initial interrogation, neither the trial judge nor the attorneys for both sides was aware "guilty" had been written on the chalkboard or that Hymel had seen it. Neither party challenged Hymel for cause after his interrogation. Apparently the bailiff discovered the word on the chalkboard and that Hymel had seen it, and he informed defense counsel. Hymel was then recalled for further voir dire questioning. This voir dire examination established Hymel had seen the word "guilty" in the jury deliberation room and he believed "the room had been recently used" since he previously had been a juror in that courtroom. Hymel stated the word "guilty" had no effect on him, he had no opinion as to appellant's guilt or innocence, and he presumed appellant to be innocent. On the basis of this record, we hold the trial judge did not abuse his discretion in denying appellant's challenge for cause to venireman Hymel. Nothing in the record indicates Hymel could not be a fair and impartial juror or that he had a bias or prejudice against any phase of the law upon which appellant was entitled to rely. Appellant's tenth point of error is overruled.

Having found no merit in appellant's points of error, we affirm the judgment of the trial court.

CLINTON, J., having reservations about treatment of several points of error, joins only the judgment of the Court.

TEAGUE, J., dissents.