NO. 07-06-0437-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 5, 2007

_____


STANLEY EUGENE PARTEE,  APPELLANT

V.

TEXAS DEPARTMENT OF PUBLIC SAFETY, APPELLEE

_____

FROM THE 106TH DISTRICT COURT OF LYNN COUNTY;

NO. 06-05-06368; HONORABLE CARTER T. SCHILDKNECHT, JUDGE

_____

Before CAMPBELL and PIRTLE, JJ. and BOYD, S.J.[1]


**OPINION**


Appellant, Stanley Eugene Partee, appeals from a judgment entered affirming an

order issued by the State Office of Administrative Hearings suspending his driver's license

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

for two years pursuant to § 724.035 of the Texas Transportation Code Annotated (Vernon Supp. 2007) for refusing a police officer's request for a specimen of breath to determine whether he was intoxicated. Partee contends no probable cause existed to believe he was operating a motor vehicle in a public place while intoxicated, no reasonable suspicion existed for his detention, and no probable cause existed for his arrest. We affirm.

## **Background**

On March 7, 2006, Deputy Jim Bingham of the Lynn County Sheriff's Office received a call reporting a "dark green Ranch King pickup" weaving on Highway US 87 approximately eleven miles north of Tahoka, Texas. Bingham left Tahoka heading north on US 87 and located a pickup matching the description facing southbound approximately ten and one-half miles north of Tahoka on US 87. The pickup was off the roadway between the shoulder and the bottom of a ditch. As Bingham approached, he noticed the engine was running and the brake lights were illuminated. He looked through the driver-side window and observed the gearshift was in the "Drive" position. He also observed the driver, Partee, appeared to be asleep with his foot on the brake pedal. Partee did not respond when Bingham knocked on the window.

Bingham opened the driver-side door and moved the gearshift to the "Park" position. Partee awoke confused. Bingham asked Partee whether he was having any trouble and Partee responded he was having marital problems. Bingham also asked for his driver's license. As they were talking, Bingham noticed a strong odor of alcohol emanating from

2

the cab. Bingham asked Partee if he had been drinking, and Partee admitted he had drank a few beers several hours earlier. He also admitted there was alcohol in the pickup. Sheriff Franklin arrived, and being advised of the situation, called Trooper Callaway of the Texas Department of Public Safety to assist. Bingham asked Partee to step out of the pickup. Partee asked the reason for the request and Bingham explained he could smell a strong odor of alcohol coming from the truck. After Partee refused repeated requests to exit his pickup, Bingham removed him from the cab. Partee was then handcuffed, patted down, and permitted to sit on the highway shoulder.

Trooper Callaway arrived, removed Partee's handcuffs, helped Partee to his feet, and began his interview. Callaway immediately smelled alcohol on Partee. Partee's speech was slurred, his eyes were bloodshot, he swayed when he stood and he needed the pickup for balance when walking. Partee admitted he had been drinking earlier and acknowledged there were open containers of alcohol in the pickup. Callaway observed a half-empty whiskey bottle in the pickup and Bingham found an open can of coke in the console containing whiskey.

Callaway informed Partee he was going to administer field sobriety tests and Partee refused to cooperate. Partee refused a preliminary breath test and, after he was given statutory warnings and requested to provide a breath test, he again refused. Callaway arrested Partee and placed him in his cruiser. On the way to the jail, Partee passed out several times.

Partee requested an administrative hearing to contest the suspension of his driver's license. After the hearing, the Administrative Law Judge issued an order sustaining suspension of Partee's driver's license. Partee appealed the ALJ's decision to the Lynn County Court, and the case was subsequently transferred to the 106th Judicial District Court where the court affirmed the ALJ's decision.

## Discussion

The issues at the administrative hearing were whether: (1) a reasonable suspicion or probable cause existed to stop and/or arrest Partee; (2) probable cause existed to believe Partee was operating a motor vehicle in a public place while intoxicated; (3) Partee was placed under arrest by the officer and was requested to submit to the taking of the specimen; and (4) Partee refused to submit to the taking of the specimen on request of the officer. Tex. Transp. Code Ann. § 724.042 (Vernon Supp. 2007).[2]

Partee does not appear to dispute whether he was intoxicated in a motor vehicle in a public place. Neither does he dispute the lower court's findings as to issues (3) and (4). Rather, he contends the trial court erred in its finding that probable cause existed to believe he was "operating" a motor vehicle. Because Partee was asleep when Bingham first approached his vehicle, he asserts he could not have been "operating" a motor vehicle.

---

[2]The Administrative Law Judge must find in the affirmative on each issue in order for the suspension order to be sustained. Tex. Transp. Code Ann. § 724.043(a) (Vernon Supp. 2007).

He next contends no reasonable suspicion existed to detain him because his truck was legally stopped on the roadside and was stationary. As a result, Partee asserts his removal from the pickup by Bingham was an illegal detention in violation of the Fourth Amendment and, consequently, all evidence obtained afterwards should be suppressed under the "fruit of the poisonous tree" doctrine. Finally, Partee asserts there was insufficient evidence for the ALJ to find probable cause existed for his arrest.

### Standard of Review

We review administrative license suspension decisions under a substantial evidence standard. *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999)*; Tex. Dep't. of Pub. Safety v. Moore,* 175 S.W.3d 270, 272 (Tex.App.–Houston [1st Dist.] 2004, no pet.); *Tex. Dep't. of Pub. Safety v. Pucek*, 22 S.W.3d 63, 67 (Tex.App.–Corpus Christi 2000, no pet.). Under this standard, the administrative decision may not be reversed unless it prejudices the substantial rights of an appellant because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

5

Tex. Gov't Code Ann. § 2001.174(2) (Vernon 2000).

We cannot substitute our judgment for the ALJ's and must affirm the administrative decision if it is supported by more than a scintilla of evidence. *Mireles*, 9 S.W.3d at 131. Thus, the issue is not whether the ALJ made a correct decision, but whether there is some reasonable basis in the record to support the ALJ's decision. *Id.* The ALJ's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence and the burden is on Partee to prove otherwise. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994). The burden for overturning an agency ruling is formidable, *Pucek*, 22 S.W.3d at 67, and the administrative decision may be sustained even if the evidence preponderates against it. *Mireles*, 9 S.W.3d at 131.

## I. "Operating" A Motor Vehicle

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). While there is no statutory definition of the term "operate," the Texas Court of Criminal Appeals has determined that a person "operates" a vehicle when the totality of the circumstances demonstrate the person took action to affect the functioning of the vehicle in a manner that would enable its use. *Denton v. State*, 911 S.W.2d 388, 390 (Tex.Crim.App. 1995) *citing Barton v. State*, 882 S.W.2d 456, 460 (Tex.App.–Dallas 1994, no writ). In *Denton,* the Court of Criminal Appeals held that "while driving does involve operation, operation does not necessarily involve driving." *Id.* at 389. Applying this

6

rationale, Partee's application of the brake pedal, thereby restraining the vehicle's actual movement, falls within the definition of "operating a motor vehicle."

Moreover, under § 724.042, the DPS is not required to prove Partee was in fact "operating" a motor vehicle while intoxicated in order to suspend his license. *See Tex. Dep't of Pub. Safety v. Butler*, 110 S.W.3d 673, 677 (Tex.App.–Houston [14th Dist.] 2003, no pet.). Because a license suspension is a civil matter, the DPS need only establish there was probable cause to believe Partee was operating a motor vehicle while intoxicated. *Church v. State,* 942 S.W.2d 139, 140 (Tex.App.–Houston [1st Dist.] 1997, pet. ref'd). Thus, Partee's first issue is a narrow one. That is, whether there is substantial evidence in the record to support the ALJ's finding that probable cause existed to believe Partee was "operating" a motor vehicle even though he was initially found asleep.[3]

There are numerous cases where a DWI arrest or conviction has been upheld under the totality of circumstances test even though the person "operating" the motor vehicle was initially found to be asleep. For instance, person(s) asleep were found to be "operating" their motor vehicle where the vehicle was parked by the roadway with its right front tire

---

[3]"Probable cause deals with probabilities." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). While it requires more than mere suspicion, it may be established by far less evidence than that necessary to support a conviction or even a finding by a preponderance of evidence. *Id.* Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Id.* Once the underlying facts are established, the existence of probable cause is a question of law for the court. *Wal-mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998).

against the curb, engine running, gearshift in "Drive" and lights on, *Freeman v. State*, 69 S.W.3d 374, 376 (Tex.App.–Dallas 2002, no pet.); stopped in a moving lane of traffic with engine running, and the vehicle's owner in the driver's seat, *Hearne v. State*, 80 S.W.3d 677, 680 (Tex.App.–Houston [1st Dist.] 2002, no pet.); or stopped on a roadway with engine running, lights on and the vehicle's operator sitting behind steering wheel, *State v. Savage, III*, 905 S.W.2d 272, 274 (Tex.App.–San Antonio 1995), *aff'd* 933 S.W.2d 497 (Tex.Crim.App. 1996).

Furthermore, prior to the adoption of the totality of circumstances test, person(s) who were asleep were found to be "operating" their motor vehicle when the vehicle was stopped in the middle of the road with engine running, gearshift in "Drive," and operator slumped behind the steering wheel with his foot on the brake, *Ray v. State*, 816 S.W.2d 97, 98 (Tex.App.–Dallas 1991, no writ); stopped in the roadway with engine running, lights on and vehicle's owner sitting behind the steering wheel, *Pope v. State*, 802 S.W.2d 418, 420 (Tex.App.–Austin 1991, no writ); stopped in the roadway at a location described by anonymous tip facing oncoming traffic with engine running, lights on, and operator asleep in driver's seat with his foot on the brake, *Hernandez v. State*, 773 S.W.2d 761, 762 (Tex.App.–San Antonio 1989, no writ); and, vehicle found half in a ditch and half on a farm-to-market road with the operator alone behind the steering wheel with both feet on the floorboard beneath the steering wheel, *Reynolds v. State*, 744 S.W.2d 156, 158-59 (Tex.App.–Amarillo 1987, writ ref'd).

After receiving a call that a truck was weaving on US 87, Bingham was dispatched to the area. Shortly thereafter, he encountered Partee's truck near the location on the highway where the pickup was reported to be weaving. Partee's pickup matched the description of the weaving vehicle and it was found to be straddling the shoulder and a roadside ditch. Partee was alone and asleep behind the steering wheel with his foot on the brake. His keys were in the ignition with the engine running, the brake lights illuminated, and the gearshift engaged. Even though Partee was asleep, there is substantial evidence to support the ALJ's finding that there was probable cause to believe Partee was operating a motor vehicle when he was discovered by Bingham. Partee's first issue is overruled.

## II.    Reasonable Suspicion To Detain Or Stop

Partee also asserts he was illegally detained when Bingham removed him from his pickup and, as a result, any evidence obtained subsequent to his detention should have been excluded from the administrative proceedings to suspend his license. In support, he asserts his detention stemmed solely from an anonymous tip in the absence of any corroborating circumstances indicating he was operating a motor vehicle while intoxicated.

There are three distinct categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002). Encounters occur when police officers approach an individual in public to ask questions, and do not require any justification whatsoever on the part of the

9

officer. *Harper v. State,* 217 S.W.3d 672, 674 (Tex.App.–Amarillo 2007, no pet.). Moreover, police officers do not violate the Fourth Amendment by merely approaching an individual in a public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *Perez*, 85 S.W.3d at 819.

A stop is deemed an investigative detention when a police officer detains a person reasonably suspected of criminal activity to determine his identity or to momentarily maintain the *status quo* while seeking additional information. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App. 1987). A law enforcement officer need not have probable cause to detain an individual for investigative purposes. *See Hall v. State*, 74 S.W.3d 521, 525 (Tex.App.–Amarillo 2002, no pet.). Rather, the officer may conduct a temporary lawful detention when he has a reasonable suspicion to believe a person is violating the law. *Ford v. State,* 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect a particular person has engaged or is (or soon will be) engaging in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001). The facts must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime. *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). That said, the acts or circumstances need not be criminal in themselves to create reasonable suspicion.

10

*Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). Thus, we examine the totality of the circumstances to determine whether Partee's detention was reasonable and justified.

As previously discussed, Bingham was dispatched to investigate an anonymous tip regarding possible criminal activity. Upon arriving at the scene, Bingham observed Partee's vehicle, with its engine running, straddling the shoulder and roadside ditch. Partee appeared to be asleep at the wheel. Unable to awaken Partee, Bingham then opened the driver-side door and moved the gearshift to the "Park" position. Partee awoke appearing confused. Up to this point, Bingham was engaged in an "encounter" with Partee, and the record reflects no evidence indicating Bingham's actions were such a display of authority that a reasonable person would not have felt free to decline Bingham's request for compliance. *See Harper,* 217 S.W.3d at 674 (collected cases cited therein).

As the two were talking, Bingham noticed a strong odor of alcohol emanating from inside the cab. Bingham asked if Partee had been drinking, and he responded he had drank a few beers several hours earlier. Partee also admitted there was alcohol in the pickup. At this point, Bingham had specific articulable facts which, when combined with rational inferences therefrom, allowed him to reasonably suspect Partee had been, and was, operating a motor vehicle in a public place while intoxicated. Accordingly, Partee's subsequent detention was reasonable and justified.

Partee contends his detention was unreasonable because he was legally parked on the roadside. In determining whether an area is a public place for purposes of § 49.04, the relevant inquiry is whether the public has access to the place. *Shaub v. State*, 99 S.W.3d 253, 256 (Tex.App.–Fort Worth 2003, no pet.). That Partee stopped in a public place merely satisfied an element of the offense of driving while intoxicated and buttressed Bingham's reasonable suspicion. Whether Partee was legally parked is of no consequence.

Partee also contends Bingham lacked reasonable suspicion because he did not actually "see" Partee operate the pickup and did not know how long Partee had been stopped by the roadside. Partee hypothecates that he could have parked his pickup by the roadside and then became intoxicated. Under this proposed scenario, Partee asserts he may have been publicly intoxicated but not intoxicated while operating a motor vehicle. As discussed above, "operating" a vehicle is not limited to "driving" a vehicle. Under the facts of this case, Bingham was justified in believing that Partee was operating his vehicle. Accordingly, in light of the totality of the circumstances, substantial evidence supported the ALJ's determination that reasonable suspicion existed to detain Partee. His second issue is overruled.

### III.    Probable Cause To Arrest

Partee contends there was insufficient evidence for the ALJ to find that Calloway had probable cause to arrest him for operating a motor vehicle in a public place while

12

intoxicated.  We have already ruled there was substantial evidence in support of the ALJ's finding that probable cause existed that Partee was "operating" his pickup when he was discovered by Bingham–even though he was asleep.  And, having stopped by the side of a highway accessible to the public, Partee and his vehicle were plainly situated in a public place.  This leaves us with the final element of the offense – intoxication.  Accordingly, we examine whether there was substantial evidence supporting the ALJ's determination that probable cause existed, at the time of Partee's arrest, that he was intoxicated.

Trooper Callaway arrived shortly after Partee was detained and continued the investigation.[4]  Callaway immediately smelled alcohol on Partee.  Partee's speech was slurred, his eyes were bloodshot, he swayed when he stood, and relied on his truck for balance when walking.  Partee admitted he had been drinking earlier and acknowledged there were open containers of alcohol in the pickup.  When Callaway informed Partee he was going to administer field sobriety tests, Partee refused to cooperate.  Partee also refused a preliminary breath test and, after he was given statutory warnings and requested to provide a breath test, he again refused.  Callaway arrested Partee and placed him in his cruiser.  On the way to the jail, Partee passed out several times.  Based upon this record, a finding of intoxication was supported by sufficient probable cause.  Partee's third issue is overruled.

---

[4]Where there has been some cooperation between police officers, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether there is reasonable suspicion; *Hoag*, 728 S.W.2d at 380, or probable cause at the time of arrest. *Woodward v. State*, 668 S.W.2d 337, 339 n.3 (Tex.Crim.App. 1982), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).

## Conclusion

Having overruled all three issues, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice