NO. 07-10-0031-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 11, 2011

_____

DENNIS SALZIDO, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY;

NO. 1123446D; HONORABLE GEORGE GALLAGHER, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Dennis Salzido, was convicted following a jury trial of felony driving while intoxicated,[1] enhanced by two prior felony convictions,[2] and was sentenced to twenty-five years confinement. In two points of error, Appellant asserts the trial court erred by denying his motion to suppress because (1) reasonable suspicion did not exist

---

[1]See Tex. Penal Code Ann. §§ 49.04(a), 49.09(b)(2) (West 2003).

[2]See Tex. Penal Code Ann. § 12.42(d) (West Supp. 2010).

for his initial detention and (2) the search warrant issued for a sample of his blood was not supported by adequate probable cause. We affirm.

## Background

On December 3, 2008, a Tarrant County Grand Jury returned an indictment alleging that, on August 7, 2008, Appellant operated a motor vehicle in a public place while intoxicated. The indictment also contained a felony repetition paragraph for two earlier DWI convictions in February 2005 and June 1997, and a habitual offender notice for two felony convictions for assault causing bodily injury to a family member in June 2006, and aggravated robbery causing serious bodily injury in December 1986.

On May 11, 2009, Appellant filed a motion to suppress all tangible evidence seized from him and his vehicle on August 7, 2008, including an open twelve-pack of beer, all statements, and the results of any analysis of Appellant's breath and/or blood due to an illegal stop or detention. On November 16, 2009, Appellant amended his motion to suppress to further allege that the search warrant issued for a sample of Appellant's blood was defective.

The trial court held a suppression hearing on December 2. Corporal Pat McGrail of the Hurst City Police Department testified that, on August 7, 2008, he was working an accident on State Highway 10 when he observed Appellant's pickup drive through an intersection before coming to a complete stop in the middle of the roadway and obstructing traffic. He approached the pickup truck and observed Appellant in the driver's seat, passed-out with his head slumped back on the headrest. His right hand was on the steering wheel and an open can of beer was in his lap. There was an open

2

twelve-pack of beer on the passenger-side floorboard. The pickup was in "Drive," Appellant's foot was on the brake and he was unresponsive. Corporal McGrail reached in the cab, placed the pickup in "Park" and turned off the ignition. He detected a moderate to heavy odor of alcohol coming from Appellant's person and the pickup's interior.

After Corporal McGrail gave Appellant several verbal commands and grabbed his wrist, he awakened. Appellant appeared disoriented, unsteady, and slow to respond. His eyes were bloodshot and watery while his speech was heavy and slurred. He was unable to walk without assistance and he smelled of alcohol. At that time, Corporal McGrail believed Appellant to be a danger to himself and others.

Officer Miguel Jimenez then administered field sobriety drills which corroborated Corporal McGrail's account of Appellant's behavior and physical condition. Officer Jimenez first administered the horizontal gaze nystagmus drill and Appellant exhibited six, out of a possible six, clues. Due to Appellant's complaints of a back injury, Officer Jimenez did not perform either the walk and turn drill or the one-legged stand drill. Instead, he administered the nose-touch drill and Appellant was unable to touch the tip of his nose. When Appellant was given the alphabet drill, he was unable to complete the sequence as instructed and was confused. Given the drill results, Appellant's bloodshot eyes, his instability, slurred speech, and the odor of alcohol coming from his person, when combined with the other officer's observations, Officer Jimenez determined Appellant was intoxicated and placed him under arrest for DWI. After placing Appellant in custody and learning of his two prior DWI convictions, the officers

3

requested a blood sample which Appellant refused. The officers then decided to seek a search warrant for a blood specimen.

Corporal McGrail prepared the search warrant. The warrant recounted the previous events observed by the officers as well as the results of Officer Jimenez's field sobriety drills. The warrant was prepared by using, as a template, a warrant previously issued on June 7, 2008, where the suspected person was a John A. Hoover. During the warrant preparation process, Corporal McGrail inadvertently left some of the information from the earlier warrant in the text of new warrant. These errors included leaving the date June 7, 2008 in the first paragraph even though the correct date of August 7, 2008 was used throughout the remainder of the warrant. Also, the name "Hoover" was left remaining in a single sentence, although Appellant's correct legal name, "Dionisio Salzido," was utilized throughout the remainder of the warrant. Further, in several instances where Appellant's name appeared, it was prefaced by "John" or "John A."-- Hoover's first name and middle initial.

Judge Ken Whiteley, Municipal Judge for the City of Hurst, Texas, testified that he visited with Officer Jimenez at 2:00 a.m. on August 8, 2008, at his house. Judge Whiteley discussed the warrant with Officer Jimenez and determined sufficient probable cause had been established for the warrant to issue.

At the hearing's conclusion, the trial court denied Appellant's motion to suppress. In so doing, the trial court determined that, after Corporal McGrail observed Appellant's pickup stopped in the middle of the roadway, Corporal McGrail had a reasonable suspicion to approach the pickup. The trial court found that Corporal McGrail had a

4

reasonable suspicion to believe Appellant was operating a motor vehicle in a public place while intoxicated when he observed Appellant unconscious in the driver's seat, with an open can of beer in his lap, the pickup in "Drive," his right hand on the steering wheel and his foot on the brake, coupled with the smell of alcohol on Appellant's person and inside the pickup. When this was further confirmed by Officer Jimenez's field sobriety drill results, he held the officers had probable cause to arrest Appellant and seek his blood sample. Despite the technical errors in the warrant, the trial court ruled that the warrant contained sufficient facts to establish probable cause that a DWI offense had occurred.

Following a two day jury trial, the jury convicted Appellant of DWI, enhanced. Thereafter, the trial court sentenced Appellant to twenty-five years confinement.

**Discussion**

Appellant asserts that his detention and subsequent investigation were unsupported by any reasonable suspicion on behalf of the officers because he had committed no traffic violation and was not driving erratically. He asserts the search warrant for his blood sample was defective because an erroneous date, June 7, 2008, was listed in the warrant's first paragraph and the name "Hoover" was used once. In addition, he contends the warrant was defective because it states Appellant "was asked to perform standard field sobriety drills" when he was only asked to perform *one* standard field sobriety drill, i.e., the horizontal gaze nystagmus drill.

**Standard of Review**

A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Amador v. State*, 275 S.W.3d 872, 878-79 (Tex.Crim.App. 2009) (citing *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008)). The trial court is the sole fact finder at a suppression hearing and it may believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Moreover, at a suppression hearing, the trial court, like any fact finder, may make reasonable inferences from the evidence presented. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008).

When reviewing a decision by a judge or magistrate to issue a search warrant, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See Rodriguez v. State*, 232 S.W.2d 55, 61 (Tex.Crim.App. 2007). That is, we uphold the probable cause determination "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236. *See Swearingen v. State*, 143 S.W.3d 808, 810 (Tex.Crim.App. 2004).

Finally, when reviewing the trial court's ruling on a motion to suppress when the trial court made explicit fact findings, as here, we determine whether the evidence, when viewed in a light most favorable to the trial court's ruling, supports those fact

findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). We then review the trial court's legal ruling *de novo* unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling*. Id.* at 819.

**Detention and Investigation**

There are three distinct categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *Partee v. Tex. Dep't. of Public Safety*, 249 S.W.3d 495, 500 (Tex.App.--Amarillo 2007, no pet.) (citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex.Crim.App. 2002)). Encounters occur when police officers approach an individual in public to ask questions, and do not require any justification whatsoever on the part of the officer. *Harper v. State*, 217 S.W.3d 672, 674 (Tex.App.--Amarillo 2007, no pet.). Police officers do not violate the Fourth Amendment by merely approaching an individual in a public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *Perez*, 85 S.W.3d at 819.

An investigative detention occurs when a police officer detains a person reasonably suspected of criminal activity to determine his identity or momentarily maintain the *status quo* while seeking additional information. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App. 1987). A law enforcement officer need not have probable cause to detain an individual for investigative purposes. *See Hall v. State*, 74 S.W.3d 521, 525 (Tex.App.--Amarillo 2002, no pet.). Rather, the officer may conduct a

temporary lawful detention when he has a reasonable suspicion to believe a person is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005).

Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in a criminal activity. *Castro v. State,* 227 S.W.3d 737, 741 (Tex.Crim.App. 2007); *Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App. 2001). The acts or circumstances need not be criminal in themselves to create reasonable suspicion. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). Thus, we examine the totality of the circumstances to determine whether Appellant's detention and the subsequent investigation were reasonable and justified. *See Curtis v. State*, 238 S.W.3d 376, 381 (Tex.Crim.App. 2007); *Castro*, 227 S.W.3d at 741.

After observing Appellant's pickup come to a complete stop in the middle of the roadway, Corporal McGrail approached the pickup. When he looked inside, he observed Appellant in the driver's seat, unconscious with his head slumped back on the headrest. Appellant had an open can of beer on his lap and there was an open cardboard container containing eleven beers in the passenger-side floorboard. The pickup was in "Drive," Appellant's foot was on the brake and he was unresponsive. Corporal McGrail placed the pickup in "Park" and turned off the ignition. Up to this point, Corporal McGrail was engaged in an encounter*. See Harper*, 217 S.W.3d at 674-75 (collected cases cited therein).

When Corporal McGrail gave Appellant several verbal commands and grabbed his wrist, the encounter became an investigative detention. At this point, Corporal McGrail had specific articulable facts which, when combined with rational inferences therefrom, allowed him to reasonably suspect Appellant had been, and was, operating a motor vehicle in a public place while intoxicated, i.e., Appellant's truck was running while parked in the middle of the roadway obstructing traffic with his foot on the brake; he was unconscious and unresponsive with an open can of beer in his lap; an open twelve-pack of beer was on the passenger-side floorboard; and a moderate to heavy odor of alcohol emanated from his person and the interior of the pickup.[3] Accordingly, Appellant's initial detention and the officer's subsequent DWI investigation were reasonable and justified. *See Partee*, 249 S.W.3d at 501. Appellant's first point of error is overruled.

## Search Warrant

Generally, taking a blood sample is a search and seizure within the meaning of the *Fourth Amendment to the United States Constitution*; *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and *Article 1, Section 9 of the Texas Constitution. Escamilla v. State*, 556 S.W.2d 796, 799 (Tex.Crim.App. 1977). If a person refuses to consent to the taking of a blood sample, the police may obtain a

---

[3]Moreover, after looking in the pickup and observing Appellant with an open can of beer, there was probable cause to arrest him for violating the open container law. A person commits an offense if the person knowingly possesses an open container in a passenger area of a motor vehicle that is located on a public highway, regardless of whether the vehicle is being operated, or is stopped or parked. Tex. Penal Code Ann. § 49.031(b) (West 2003). An "open container" is defined as "a bottle, can, or other receptacle that contains any amount of alcoholic beverage that is open"; *Id.* at 49.031(a)(1), and "passenger area of a motor vehicle" is defined as "the area of the motor vehicle designed for the seating of the operator and passengers of the vehicle." *Id.* at § 49.031(2).

defendant's blood for DWI investigation through a search warrant. *Beeman v. State*, 86 S.W.3d 613, 616 (Tex.Crim.App. 2002); *Muniz v. State,* 264 S.W.3d 392, 396 (Tex.App.--Houston [1st Dist.] 2008, no pet.). *See* Tex. Code Crim. Proc. Ann. art. 18.10(j) (West Supp. 2010).

A search warrant may not issue unless it is based on probable cause as determined within the four corners of a sworn affidavit. Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2010) ("A sworn affidavit . . . establishing probable cause shall be filed in every instance in which a search warrant is requested.") *See Jones v. State,* 833 S.W.2d 118, 123 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.E.2d 678 (1993). "Probable cause exists when, under the totality of circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at a specified location." *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex.Crim.App. 2007). In making our evaluation, we focus on the combined force of the facts that are in the affidavit coupled with inferences from those facts, to establish whether there is a "fair probability" that evidence of a particular crime will likely be found; *id.,* while affording the initial judicial decision to issue the search warrant great deference. *Davis v. State*, 144 S.W.3d 192, 197 (Tex.App.--Fort Worth 2004, pet. ref'd).

"[P]urely technical discrepancies in dates or times do not automatically vitiate the validity of search or arrest warrants." *Green v. State*, 799 S.W.2d 756, 759 (Tex.Crim.App. 1990). The two objectives of the law concerning search warrants are to ensure there is adequate probable cause to search, and to prevent a mistaken execution against an innocent third party. *Id.* These objectives are not furthered by

10

rigid application of the rules concerning search warrants; *id.,* and parol evidence, in the form of explanatory testimony, may be used to cure technical defects. *Id.* at 760.

Here, Corporal McGrail's isolated errors in drafting the affidavit by failing to delete a single date and name from his template may be classified as either clerical or typographical. Throughout the remainder of the affidavit, Appellant's legal name and the correct date were used. We hold that the trial court properly considered Corporal McGrail's testimony explaining why the conflicting date and name were clerical or typographical errors and that the evidence, viewed in a light most favorable to the trial court's fact findings, supports the trial court's determination that these isolated errors were clerical errors made by Corporal McGrail in completing his paperwork. See *Kelly v. State,* 204 S.W.3d 808, 818-19 (Tex.Crim.App. 2006); *Green,* 799 S.W.2d at 760. Because these clerical errors are not the type of error that would invalidate an otherwise valid search warrant, we find that the trial court did not err by denying Appellant's motion to suppress.[4]

Neither did the trial court err in denying Appellant's motion to suppress because the affidavit stated that "Salzido was asked to perform standard field sobriety drills." At the suppression hearing, Officer Jimenez testified that he asked Appellant to perform

---

[4]*See Rougeau v. State,* 738 S.W.2d 651, 663 (Tex.Crim.App. 1987) (upholding warrant because evidence showed affidavit dated January 6, 1977, instead of January 6, 1978, was clearly a typographical error), *cert. denied,* 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988), *overruled on other grounds by Harris v. State,* 784 S.W.2d 5, 19 (Tex.Crim.App. 1989); *Lyons v. State,* 503 S.W.2d 254, 256 (Tex.Crim.App. 1973) (upholding warrant when evidence was introduced to show that the police officer mistakenly typed "March" instead of "July" on the affidavit); *Martinez v. State,* 162 Tex. Crim. 356, 285 S.W.2d 221, 222 (1955) (upholding warrant when testimony was offered that "December" was mistakenly written on warrant affidavit instead of "January").

the standard field sobriety drills, i.e., horizontal gaze nystagmus, walk and turn, and one-legged stand drills. However, because Appellant told him he had back issues, Officer Jimenez first performed the horizontal gaze nystagmus drill and then decided to perform the following non-standardized drills -- nose-touch, counting and alphabet drills. Officer Jimenez testified Appellant exhibited extreme nystagmus and could not perform the other drills, i.e., as the affidavit stated, "Salzido failed each of the drills" and, "[i]n addition, failed the Nystagmus drill."

Further, although the affidavit appears to indicate that Appellant was asked to perform standard field sobriety drills and failed only "standard" drills rather than a combination of "standard" and "non-standard" drills, there was no evidence presented at the suppression hearing to indicate that failing "standard" drills as opposed to "non-standard" drills was any more or less indicative of Appellant's intoxicated condition.[5] In fact, even without reference to the drills, there remained sufficient evidence in the affidavit to support a finding of probable cause to believe Appellant was operating a motor vehicle in a public place while intoxicated. The affidavit stated that Appellant's pickup came to a complete stop in the middle of the roadway with Appellant inside slumped back in the driver's seat with his head tilted back over the headrest, the engine running, the ignition on, the transmission in "Drive," his foot on the brake and a partially consumed can of beer in his lap while his right hand was on the steering wheel. Further, it states there was an open twelve-pack of beer on the floorboard and, when Appellant exited the vehicle, his speech was heavy and slurred, his eyes bloodshot and

---

[5]Corporal McGrail testified the non-standard drills were alternatives to the standard drills.

watery, he had difficulty maintaining his balance and had an alcoholic odor about his breath and body.  Accordingly, we find, under the totality of the circumstances, that the trial court did not abuse its discretion in finding the affidavit established a "fair probability" that evidence of intoxication would likely be found if Appellant's blood were tested.  Appellant's second point of error is overruled.

## Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice

Do not publish.