In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00133-CR**
_____

**JAMES DWAYNE CROWLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-10-11144-CR**

**MEMORANDUM OPINION**

A jury convicted Appellant, James Dwayne Crowley, of aggravated robbery. *See* Tex. Penal Code Ann. §§ 29.02, 29.03(a)(2) (West 2011). Crowley appeals his conviction. In four issues, Crowley complains the trial court committed reversible error by: (1) denying his motion to suppress a search warrant for cellular telephone data; (2) refusing his requested article 38.23 jury instruction regarding cellular telephone data; (3) denying his motion to suppress evidence collected from a blue

1

Dodge vehicle; and (4) refusing his requested article 38.23 jury instruction regarding evidence collected from a blue Dodge vehicle. We affirm the trial court's judgment.

## I. Background

After midnight on October 18, 2015, Crowley entered the Flying J Truck Stop in New Caney, Texas. During the approximately five hours that followed, Crowley entered the store multiple times and changed his attire several times. In video surveillance from the truck stop, Crowley's distinctive hand tattoos are visible, as well as his wristwatch, and boots. These remained visible and consistent despite the clothing changes.

During those early morning hours, Crowley, wearing a short-sleeved gray Dallas Cowboys t-shirt, was captured on camera stealing multiple items from the store, including a flashlight and Cobra GPS units. At one point, Crowley is observed speaking to a clerk and pointing to items on an aisle in the electronics section of the store. After interacting with the clerk, he is then observed on video watching the clerk disappear down a hall toward an office into a restricted area, while he remained in the unrestricted part of the store. Later, Crowley entered the restricted area, proceeded down the hall to the back office, grabbed an armload of merchandise, including a Cobra GPS unit, and exited through the rear door of the store.

2

He returned to the store after 3:00 a.m., wearing the same gray Dallas Cowboys t-shirt, but he had added a jacket and a blue Dallas Cowboys hat. Crowley stole multiple Cobra GPS units and was recorded checking the safe. At one point in the evening, the surveillance camera also captured him speaking with witness Ronald Hill.

Following the merchandise thefts, Crowley re-entered the store shortly before 5:00 a.m. wearing a different jacket and a camouflaged hat with flaps over the ears. A little before 5:00 a.m., the surveillance cameras captured Crowley taking a glove out of a package in the store and putting it on his right hand. He is then observed pointing a gun at Connie Prior and another employee in the office area. Prior can be seen opening the safe, and Crowley is seen removing two large bags of coins. As Crowley was struggling with the bags of coins from the safe, the gun went off and a projectile ricocheted off the floor, hitting Prior in the arm. Unable to sustain the weight of the coins, the handle from the cloth shopping bag Crowley was using broke and it was left on the floor in the store. Crowley dropped one of the bags of coins outside the store but got away with one bag of coins.

Officers responded to the scene and collected surveillance footage from the store. Upon reviewing the footage, an officer recognized Hill, the man Crowley spoke with briefly in the store. The officers located Hill, and after speaking with

3

him, concluded James Crowley was a suspect. The lead investigator on the case, Montgomery County Sheriff's Office ("MCSO") Detective Hahs, obtained an arrest warrant for Crowley. The MCSO determined Crowley drove a blue Dodge vehicle owned by his wife and acquired its license plate number. At the scene, they recovered the handle from the shopping bag Crowley used and the projectile fired from the gun.

On October 21, 2015, Hahs and his partner received a call from MCSO Sergeant Swilling regarding a shots-fired incident in another part of the county, advising them that the description of the shooter matched their armed robbery suspect.[1] On the way to the shots-fired location, Hahs observed a vehicle matching Crowley's vehicle traveling the opposite direction. Hahs testified he made a U-turn and followed it until it pulled into the parking lot of a local business. The license plate number matched the one on the vehicle owned by Crowley's wife. Hahs testified that because he had an arrest warrant for Crowley and was unsure who was in the vehicle at the time, he and his partner proceeded to perform a felony takedown. The individuals exited the vehicle, but Crowley was not with them. A blue Dallas

---

[1] Crowley was ultimately arrested by a patrolman a short distance away from the shots-fired incident walking down the street.

Cowboys hat matching the one Crowley wore the night of the armed robbery was observed in plain view on the deck of the rear window.

Hahs testified the driver of the vehicle, John Colletti, said he borrowed the car from Crowley, and there was no evidence connecting the individuals in the vehicle to the crime. Colletti offered to ride with detectives and take them to the gun used during the robbery. Hahs testified that because Colletti left with them, and none of the other individuals owned the car or had been given permission to drive, they impounded the vehicle. Due to it being impounded, department policy required Hahs to conduct an inventory search of the vehicle, which he briefly did at the location of the felony takedown. During the inventory, Hahs located a GPS box consistent with the ones taken from the truck stop, as well as drug paraphernalia. Hahs confirmed he did not have a warrant to search the vehicle.

Detective Hahs testified that it appeared Colletti had information that might be useful to the investigation. Colletti took them to an RV park to the residence of Terry Goad. As soon as detectives told Goad why they were there, he directed them to a gun in the glove box of his motor home. The officers located a .380 pistol and magazine in the glove box and took the items as evidence. Goad confirmed he purchased the gun from Crowley on October 21, 2015, several days after the robbery.

5

Later in the investigation, Hahs obtained a search warrant to retrieve data from Crowley's cell phone. The judge signed the warrant at 3:23 p.m. on October 27, 2015. However, the return is dated August 7, 2009. At trial, Hahs testified he executed the search warrant "immediately" and acknowledged the wrong date on the return was a clerical error.

The primary focus of the State's case was video surveillance footage from the store that captured the crime on film and photographs retrieved from those surveillance videos. The State's ballistics expert testified regarding the tests performed and concluded that the projectile retrieved as evidence from the store was fired from the gun Crowley sold to Goad. Moreover, DNA obtained from the shopping bag handle also linked Crowley to the crime. Evidence obtained from the blue Dodge included the blue Dallas Cowboys hat and a GPS unit from the trunk. Cell phone data from Crowley's phone showed multiple searches seeking information regarding the aggravated robbery at the Flying J and searches for criminal defense attorneys in the days after the robbery.

Following two hearings, the trial court denied Crowley's motion to suppress the evidence seized from the vehicle and the cell phone data. The trial judge also denied Crowley's requested article 38.23 jury instruction. The jury convicted Crowley of aggravated robbery, and Crowley elected to have the trial judge

6

determine punishment. Crowley pled true to all six enhancements and the trial judge, having found four of the enhancements true, sentenced Crowley to life in prison.

## II. Motion to Suppress: Issues One and Three[2]

Crowley contends the trial court committed reversible error by denying his motion to suppress the evidence seized from the vehicle and the cell phone data. Prior to trial, he filed a motion to suppress. In the motion to suppress, Crowley specifically argued that the "Sworn Inventory And Return is insufficient, false, and blatantly defective on its face and taints all aspects of the search and notice requirements" under article 18.06. *See* Tex. Code of Crim. Proc. Ann. art. 18.06 (West Supp. 2018).[3] He further contends his 4th, 5th, and 14th Amendment rights were violated because the return was not verified in a timely manner.

Crowley also moved to suppress the GPS unit and GPS box located within the vehicle. He contends the evidence was seized as a result of a warrantless search, was illegal, did not comply with the Texas Code of Criminal Procedure and is a violation of his 4th, 5th, and 14th Amendment rights. Crowley did not address the hat in the

---

[2] For purposes of organization and clarity, we address the suppression issues together and the jury instruction issues together.

[3] We cite to the current versions of the applicable provisions of the Code of Criminal Procedure, as any amendments do not affect the outcome of this appeal.

motion to suppress or at the suppression hearing, but he argues on appeal the Dallas Cowboys hat should have been suppressed as well.

During the suppression hearing, the State first argued the items were identified as the result of a valid inventory search. Additionally, the State argued in the suppression hearing it had probable cause, because the vehicle matched the description of the one driven by Crowley, and the Dallas Cowboys hat identical to the one surveillance cameras captured Crowley wearing was in plain view on the rear window deck of the vehicle. The State contended that the hat in plain view matching the hat from the surveillance video led to probable cause for the stolen items.

In denying the motion to suppress in its entirety, the trial judge stated on the record,

> I agree that items might not have been seized or taken out until a later date; however, I did hear testimony to support that he identified those items . . . there at the location of the traffic stop, and that stop was conducted based on arrest warrants (sic) – that Detective Hahs had in his possession that was legally obtained. So I'm going to deny your motion to suppress in its totality.

## A. Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard. *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016) (citing *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013)). We review a trial

8

court's findings of fact for abuse of discretion and the trial court's application of the law to the facts *de novo*. *Id.* If a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000)). If the trial court makes explicit fact findings, we view the evidence in the light most favorable to the trial court's ruling and determine if it supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We then review the trial court's legal ruling *de novo*. *Id.* at 819. We uphold the trial court's ruling if supported by the record and correct under any theory of law applicable to the case, even if the reason provided by the trial court is wrong. *See Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). We give almost total deference to the trial court's implied findings, particularly those based on an evaluation of witness credibility and demeanor. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). At a suppression hearing, the trial court is the sole trier of fact and judge of the witnesses' credibility. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve part or all of the witnesses' testimony. *Ross*, 32 S.W.3d at 855.

9

**B. Analysis**

**1. Cellular Telephone Data**

A judge or magistrate must sign and date a search warrant. Tex. Code Crim. Proc. Ann. art. 18.04 (West Supp. 2018). The magistrate must include the date and hour the warrant issues. Tex. Code Crim. Proc. Ann. art. 18.07(b) (West Supp. 2018). Generally, a warrant must be executed within three days of its issuance, excluding the date of issuance and the date of execution. *Id.* art. 18.07(a)(3). "[P]urely *technical* discrepancies in dates or times do not automatically vitiate the validity" of a search warrant. *Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990). The court must determine whether there is evidence to support a finding that the discrepancy is "merely a clerical or technical error." *See id.*; *Arredondo v. State*, No. 14-16-00110-CR, 2017 WL 592234, *4 (Tex. App.—Houston [14th Dist.] Feb. 14, 2017, no pet.) (mem. op., not designated for publication). This evidence is usually provided through the testimony of a knowledgeable witness. *Green*, 799 S.W.3d at 760. Technical defects in a warrant can be cured by explanatory testimony. *See id.*; *Rougeau v. State*, 738 S.W.2d 651, 663 (Tex. Crim. App. 1987), *overruled on other grounds*, *Harris v. State*, 784 S.W.2d 5 (1989); *Lyons v. State*, 503 S.W.2d 254, 255–56 (Tex. Crim. App. 1973); *Martinez v. State*, 285 S.W.2d 221, 222 (Tex. Crim. App. 1955).

Crowley asserts on appeal that an incorrect date on the return invalidated the entire warrant for the cellular telephone data because it is unknown if the warrant was executed within the three-day timeline. We disagree. The judge signed the warrant, included the date October 27, 2015, and the time. However, the return attached to the warrant was dated August 7, 2009. During the suppression hearing and in front of the jury, Detective Hahs testified he signed the return. He further testified that it was a "clerical error," and he printed the document without realizing he had not changed the date on the return. We conclude this testimony provided evidence from which the trial court could conclude the incorrect date on the return was purely clerical, and therefore the warrant itself was not invalid. *See Green*; 799 S.W.3d at 760; *Martinez*, 285 S.W.2d at 222. Furthermore, to the extent Crowley attempts to argue on appeal that the warrant was not executed or returned timely, Detective Hahs testified that he executed the warrant "immediately" after it issued. Crowley did not offer any evidence to contradict this testimony or obtain clarification from Detective Hahs about the meaning of "immediately." We conclude the trial court did not err in denying the motion to suppress the cellular telephone data.

**2. Hat Seized from the Vehicle**

Despite his argument on appeal that the hat and any DNA evidence from the hat should have been suppressed as well, Crowley failed to make this argument in his motion to suppress or during the suppression hearing.[4] The trial judge inquired multiple times regarding the specific evidence seized from the vehicle, and Crowley only mentioned the GPS unit and GPS box. Because he failed to urge for suppression of the hat during trial, we find he has waived any complaint regarding the admission of that evidence. *See* Tex. R. App. P. 33.1; *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citations omitted) (noting that to preserve a complaint, a party must present the trial court with a timely request, objection, or motion stating the specific grounds, and the appellate argument must comport with the objection made at trial).[5]

**3. GPS Units Seized from the Vehicle**

While Crowley argues the evidence seized from the vehicle was obtained illegally and without a warrant, the State asserts Detective Hahs lawfully impounded

---

[4] The record does not indicate the hat at issue was tested for DNA.

[5] This was supported by the State's photographs admitted at trial, which depict the hat in plain view through the vehicle's back windshield. Even if we assume Crowley preserved error, neither the hat's observation or seizure invaded his privacy, as it was in plain view when the car was pulled over pursuant to a valid arrest warrant. *See Horton v. Cal.*, 496 U.S. 128, 133–34 (1990) (citations omitted); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000) (citations omitted).

the vehicle and conducted an inventory of the vehicle. The Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution protect individuals against unreasonable searches and seizures. U.S. CONST. amend. IV; Tex. Const. art. I, § 9; *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). Generally, a search without a warrant is considered unreasonable subject to a few established exceptions. *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

Assuming without deciding the trial court erred in denying Crowley's motion to suppress the GPS unit and box found in the vehicle, we must determine whether Crowley was harmed by the denial of the motion to suppress. *See* Tex. R. App. P. 44.2(a). We will reverse unless we determine beyond a reasonable doubt the admission of the GPS evidence did not contribute to the guilty verdict. *See id.* Said another way, the critical inquiry is whether there is a "reasonable possibility" the error might have contributed to the conviction. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (citing *Wilson v. State*, 938 S.W.2d 57, 60 (Tex. Crim. App. 1996)). An error does not contribute to the conviction if the jury's verdict would be the same even if the erroneous evidence had not been admitted. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (quoting *Neder v. United States*, 527 U.S. 1, 15–18 (1999)). In determining whether constitutional error in the

13

admission of evidence is harmless, we consider these factors: (1) the importance of the evidence to the State's case; (2) whether the evidence was cumulative of other evidence; (3) the presence or absence of other evidence corroborating or contradicting the evidence on material points; (4) the overall strength of the State's case; and (5) any factor, as revealed by the record, that may shed light on the probable impact of the error on the average juror. *Id.* (citing *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006)).

The GPS unit and box retrieved from the vehicle were not critical to the State's case. This evidence was cumulative of other evidence, specifically the surveillance video which captured Crowley in the act of stealing GPS units. A jury could have convicted Crowley on the surveillance video alone, which depicted him casing the store for hours, attempting to disguise himself, stealing multiple items, and pointing a gun at store employees while making them open the safe so he could retrieve bags of coins. In addition to the surveillance video, DNA from the shopping bag handle left at the scene connected Crowley to the scene. Finally, ballistics tests on a gun located in the possession of a man who testified he purchased it from Crowley days after the robbery, established that the projectile retrieved at the scene was fired from the same gun. Based on these factors, we conclude there was other overwhelming evidence of guilt that made the admission of the GPS evidence harmless.

The trial court did not err in denying Crowley's motion to suppress the cellular telephone data, and Crowley waived any complaint about the hat. With other overwhelming evidence of guilt, even if the trial court erred in denying the motion to suppress the GPS box and unit seized from the vehicle, such error was harmless. We overrule issues one and three.

## III. Article 38.23 Instruction: Issues Two and Four

Crowley argues on appeal that the trial court erred in refusing his requested 38.23 instruction pertaining to cellular telephone data and in refusing his requested 38.23 instruction pertaining to evidence seized from the vehicle. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2018). While Crowley characterizes these as "requested" instructions, the record reveals the defense's requested instruction was very generic and did not address the cellular telephone data evidence in conjunction with the article 38.23 instruction.

### A. Standard of Review

Under *Almanza*, we utilize a two-step process in reviewing jury charge error. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). First, we determine whether there was error in the charge. *See Ngo*, 175 S.W.3d at 743. Second, we examine whether the appellant was harmed by the error. *See id.* The level of harm required for reversal

15

depends upon whether the appellant preserved the error by objecting at the trial court level. *Id.* If the appellant objected to the charge, we will reverse if we find some harm. *See id.* (citing *Almanza*, 686 S.W.2d at 171). However, if the appellant failed to object to the charge, we will not reverse unless egregious harm is established by the record. *See id.* at 743–44.

**B. Analysis**

Article 38.23 provides that evidence obtained in violation of the laws or Constitution of the United States or Texas may not be admitted in a criminal case. Tex. Code Crim. Proc. Ann. art. 38.23(a); *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). A jury instruction should be submitted if a fact issue is raised about whether such a violation occurred. Tex. Code Crim. Proc. Ann. art. 38.23(a); *Hamal*, 390 S.W.3d at 306. The instruction requires the jury to disregard evidence that it finds was obtained in violation of the laws or United States or Texas Constitution. Tex. Code Crim. Proc. Ann. art. 38.23(a); *Hamal*, 390 S.W.3d at 306. A defendant must show the following to be entitled to an article 38.23 jury instruction: "(1) the evidence heard by the jury must raise an issue of fact[;] (2) the evidence on that fact must be affirmatively contested[;] and (3) the contested factual issue must be material to the lawfulness of the challenged conduct." *Hamal*, 390

S.W.3d at 306 (citing *Spence v. State*, 325 S.W.3d 646, 653–54 (Tex. Crim. App. 2010); *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008)).

A jury instruction can operate "only if there is a contested issue of fact about the obtaining of the evidence . . . . There is no issue for the jury when the question is one of law only." *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000) (citing *Bell v. State*, 938 S.W.2d 35, 38 (Tex. Crim. App. 1996)). The Court of Criminal Appeals has explained,

> [i]f there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct.

*Madden v. State*, 242 S.W.3d 504, 510–11 (Tex. Crim. App. 2007) (internal citations omitted).

**1. Article 38.23 Instruction Regarding Cellular Telephone Data**

At trial, Detective Hahs acknowledged the clerical error in the return, which contained the wrong date. He further testified the warrant was executed "immediately" after it was issued. Crowley asserts on appeal that "immediately" is subject to interpretation, and there is no way to ascertain if he executed the warrant within the three days allowed. *See* Tex. Code of Crim. Proc. Ann. art. 18.06(a). There

17

was no fact issue raised about whether the date was incorrect at trial or whether Detective Hahs failed to execute the warrant in a timely manner. Crowley did not bring any witness to contradict Detective Hahs's testimony. He also did not inquire or seek clarification on cross-examination of the word "immediately." None of these facts were disputed. Whether the warrant and return were invalid was solely a legal question. *Pierce*, 32 S.W.3d at 251. As such, Crowley was not entitled to an article 38.23 instruction for the cellular telephone data because he did not meet the requirements which would entitle him to the instruction. *See Hamal*, 390 S.W.3d at 306; *Madden*, 242 S.W.3d at 510–11. We overrule issue two.

**2. Article 38.23 Instruction Regarding Evidence from the Vehicle**

In *Garza v. State*, the Court of Criminal Appeals addressed a similar scenario. 126 S.W.3d 79 (Tex. Crim. App. 2004). In that case, a vehicle was impounded after the appellant's van was stopped when he made an illegal turn. *Id.* at 81. Officers determined the appellant had two outstanding arrest warrants. *Id.* After arresting him, officers performed an inventory search of appellant's van finding drug paraphernalia and cocaine. *Id.* The appellant moved to suppress the evidence, which the trial judge denied. *Id.* There, the court found that appellant did not controvert the facts to which the officers testified. *Id.* at 87 (citing *Thomas v. State*, 884 S.W.2d

215, 218 (Tex. App.—El Paso 1994, pet. ref'd)). The Court concluded no fact issue arose as to the legality of the search. *Id.*

The same is true here. Detective Hahs maintained he had a valid arrest warrant when he and his partner stopped the vehicle and performed a felony takedown. They impounded the vehicle to protect its contents, because the owner of the vehicle, Crowley's wife, was not present, and the driver who borrowed the car left the scene with detectives. Hahs further testified MCSO policy dictated he inventory the vehicle, which he did.

During cross-examination, Crowley's counsel attempted to raise a fact issue by asking if Crowley was actually in custody at the time the vehicle was stopped. Detective Hahs responded he believed he was, but there is no indication Hahs was aware of that fact at the time he stopped the vehicle. Hahs was on the way to a shots-fired call because the suspect matched Crowley's description and on the way there, he observed the vehicle at issue. The takedown ensued, and he testified repeatedly he was looking for Crowley when he stopped the vehicle.

Defense counsel asked multiple questions about the impounding of the vehicle and whether the other individuals on the scene had licenses and could have driven the vehicle. Detective Hahs responded that he did not know who they were, and they had not been given permission to drive the vehicle.

19

The questions by defense counsel are nothing more than mere insinuations the officer may have veered from the impound and inventory policy. *See id.* at 87 ("Mere insinuations by appellant's attorney that no inventory slip was made, in light of the testimony by each officer that such a slip did indeed exist, did not raise a fact issue as to the existence of the inventory slip.") Here, Crowley failed to show Detective Hahs strayed from the boundaries set in the MSCO rules, and the rules were not even introduced into evidence. *See id.* at 86. Without evidence of the content of the rules, Crowley's counsel "did nothing more than hint at the mere possibility that the officers *may* have breached the [MCSO] rules." *See id.*

Crowley did not call any of the vehicle's occupants at the time of the stop to testify and cast doubt on the detective's version of events, nor did he call the other officer at the scene to testify. Crowley did not inquire about an inventory slip or the actual content of the MCSO policy. With respect to the timing of Crowley's arrest, no evidence was adduced to show Detective Hahs was aware Crowley was in custody at the time he stopped the vehicle. Just as with the cellular telephone data, there was not a disputed factual issue raised with the circumstances of the vehicular stop and subsequent search and seizure of the evidence. The only matter in question was whether the undisputed circumstances gave detectives the legal right to search the vehicle, which is a question of law. *See Pierce*, 32 S.W.3d at 251; *Garza*, 126

20

S.W.3d at 86. Accordingly, Crowley was not entitled to an article 38.23 instruction regarding the evidence seized from the vehicle. *See Madden*, 242 S.W.3d at 510–11; *Garza*, 126 S.W.3d at 86–87. We overrule issue four.

## IV. Conclusion

The trial court did not err in denying the motion to suppress the cellular telephone data. Crowley failed to preserve error for his complaint that the hat should have been suppressed. Assuming without deciding the trial court erred in denying the motion to suppress GPS evidence from the vehicle, such error was harmless in light of the other overwhelming evidence of guilt in this case. The trial court did not err in refusing to include Crowley's requested article 38.23 jury instruction, as he failed to raise a disputed issue of fact entitling him to such an instruction. Having overruled all of Crowley's issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 2, 2018
Opinion Delivered February 27, 2019
Do Not Publish

Before McKeithen, C.J., Kreger, and Horton, JJ.

21